15 P.3d 1129

In the Matter of the Verified Petition for Writ of Prohibition and Application for Declaratory Judgment.

Jack VAN VALKENBURGH, an individual, Penny Fletcher, an individual, W. Anthony Park, an individual, Petitioners,

v.

CITIZENS FOR TERM LIMITS, a proponent of Initiative Measure, 1998 No. 1, 1677 East Miles #103, Hayden Lake, Idaho 83855; Donald Morgan, in his capacity as Campaign Chairman of Citizens for Term Limits, Pete T. Cenarrusa, in his official Capacity as Secretary of State of the State of Idaho, 700 W. Jefferson, Room 203, PO Box 83720, Boise, Idaho, 83720-0080, Respondents.

No. 26080.

Supreme Court of Idaho.
Boise, March 2000 Term.

Dec. 6, 2000.

Kurt Holzer, Boise, and Elizabeth B. Brandt, Topeka, KS, argued for petitioners.

Hon. Alan G. Lance, Attorney General, Boise, for respondent Pete T. Cenarrusa. Matthew McKeown, Deputy Attorney General, argued.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene; Stephen Safranek, Ann Arbor, MI, for respondents Citizens for Term

Limits and Donald Morgan. Stephen Sefranek argued.

SILAK, Justice.

## NATURE OF THE CASE

This is a petition for a writ of prohibition and application for a declaratory judgment seeking to prevent the Secretary of State from taking any action pursuant to I.C. § 34–970B and seeking to have I.C. § 34–907B declared unconstitutional under both the Idaho Constitution and the United States Constitution. The Petitioners, Jack Van Valkenburgh, Penny Fletcher, W. Anthony Park, and Larry Eastland, argue I.C. § 34–907B violates the guarantees of freedom of speech and the right to vote found in both the Idaho Constitution and the United States Constitution. Because we find the ballot legend unconstitutional, we issue a writ of prohibition prohibiting the Secretary of State from carrying out the directions contained in subsections (3) and (4) of I.C. § 34–907B as they pertain to the placement of ballot legends on the ballot. Additionally, because we find that subsection (5) is not severable from the unconstitutional portions of the statute, we also strike down that subsection. Finally, we deny petitioners attorney fees under the private attorney general doctrine.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1998, proponents of federal term limits successfully campaigned for the passage of a ballot initiative called "The Congressional Term Limits Pledge Act of 1998." This initiative, now codified as I.C. § 34–907B, reads as follows:

34–907B. **Term Limits Pledge.**—(1) The Secretary of State shall permit but not require any candidate for the United States Congress to submit to the Secretary of State an executed copy of the Term Limits Pledge set forth in subsection (2) of this section up until 15 days prior to the Secretary of State's certification of the ballot in order for the ballot information set forth in subsections (3) and (4) of this section to be included on that ballot.

(2) The Term Limits Pledge will be as set forth herein and will incorporate the applicable language in brackets, "[ ]" for the office the candidate seeks: I voluntarily pledge not to serve in the United States [House of Representatives for more than three (3) terms] [Senate more than two (2) terms] after the effective date of this provision. I understand that informing the voters that I have taken this pledge is important to the voters. I therefore authorize, instruct and ask the Secretary of State to notify voters of this action by placing the applicable ballot information, "Signed TERM LIMITS pledge to serve no more than [three (3) terms] [two (2) terms]" or "Broke TERM LIMITS pledge" next to my name on every election ballot and in all state sponsored voter education material in which my name appears as a candidate for the office to which the pledge refers.

_____    _____
Signature                      Date

(3) The Secretary of State shall place on every election ballot and in all state sponsored voter education material the applicable ballot information, "Signed TERM LIMITS pledge to serve no more than [three (3) terms] [two (2) terms]" next to the name of any candidate for the office of United States Representative and United States Senator who has ever executed the Term Limits Pledge except when subsection (4) of this section applies.

(4) The Secretary of State shall place on every election ballot and in all state sponsored voter education material the ballot information, "Broke TERM LIMITS pledge" next to the name of any candidate who at any time executes the Term Limits Pledge and thereafter qualifies as a candidate for a term that would exceed the number of terms set forth in the Term Limits Pledge.

(5) The Secretary of State, or designated election official, at every election for U.S. Representative or U.S. Senator held after the effective date of this act, and notwithstanding the provisions of any other potential conflicting statute, including Idaho

Code sections 18–2318 and 18–2323, shall post in a conspicuous place in every polling location a copy of the Term Limits Pledge set forth in subsection (2).

(6) For the purpose of this section, service in office for more than one-half of a term shall be deemed service for a term.

(7) The state recognized proponents and sponsors of this initiative shall have standing to defend this initiative against any challenge in any court.

(8) The Secretary of State shall implement this act by rule as long as such rules do not alter the intent of this section.

(9) If any portion, clause or phrase of this act is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, the remaining portions, clauses, and phrases shall not be affected, but shall remain in full force and effect.

The Petitioners, all registered voters in the State of Idaho, filed a petition in this Court seeking a writ of prohibition preventing the Secretary of State from implementing I.C. § 34–907B and a declaratory judgment finding I.C. § 34–907B unconstitutional. This Court then entered an order allowing the Secretary of State and Citizens for Federal Term Limits (CFTL), the primary proponents of the initiative, to respond to the Petitioners and set the case for oral argument. After briefing and oral argument, this Court issued an order directing the Secretary of State to refrain from implementing the statute until we could fully consider the matter and issue a decision.

## II.

## JURISDICTION

This Court has original jurisdiction, pursuant to Article 5, § 9 of the Idaho Constitution, to "issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate authority." IDAHO CONST., art. V, § 9. This Court "will exercise jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature." *Idaho Watersheds Project v. State Board of Land Commissioners,* 133 Idaho 55, 57, 982 P.2d 358, 360 (1999). In this case, the Petitioners have alleged I.C. § 34–907B violates both the right to free speech and the right to vote as guaranteed by the Idaho Constitution and the United States Constitution. Additionally, at the time, the Petitioners alleged the violation was of an urgent nature because the Secretary of State had to certify the primary election ballot by April 10, 2000. The implementation of the statute has only been delayed by our order requiring the Secretary of State to wait until we issued this decision. This Court, therefore, has jurisdiction to hear this petition, and our review is "limited to a simple declaration of [the statute's] constitutionality or lack thereof." *Mead v. Arnell,* 117 Idaho 660, 664, 791 P.2d 410, 414 (1990).

## III.

## DISCUSSION

### A. Standing.

It is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing. Because I.C. § 34–907B, by its terms, applies only to those seeking election, or reelection, to a seat in the U.S. Congress, we must first determine whether the Petitioners, as registered voters in the State of Idaho, have standing to challenge the constitutionality of I.C. § 34–907B. This Court has previously stated, "[t]he doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). In order to satisfy the case or controversy requirement of standing, a litigant must "allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Miles,* 116 Idaho at 641, 778 P.2d at 763; see also *Boundary Backpackers v. Boundary County,* 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996); *Selkirk–*

*Priest Basin Ass'n v. State*, 128 Idaho 831, 833–34, 919 P.2d 1032, 1034–35 (1996). Additionally, "a citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered by all citizens and taxpayers alike." *Miles*, 116 Idaho at 641, 778 P.2d at 763; see also *Boundary Backpackers*, 128 Idaho at 375, 913 P.2d at 1145; *Selkirk–Priest Basin Ass'n*, 128 Idaho at 833–34, 919 P.2d at 1034–35.

■ Based on the standard set forth above, the first question to be answered is whether the Petitioners have alleged or demonstrated an injury caused by the Respondents' action. Here, the Petitioners have alleged they will suffer a "distinct palpable injury" to their right to vote if the Secretary of State is allowed to implement I.C. § 34–907B. *Miles,* 116 Idaho at 641, 778 P.2d at 763 (quoting *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595, 610 (1978)). The Petitioners allege the law violates their right to vote because the law will infringe on the rights of qualified voters to cast their votes effectively by "greatly diminishing the likelihood the candidate of their choice will prevail in the election." *Miller v. Moore*, 169 F.3d 1119, 1123 (8th Cir.1999) (finding voters had standing to challenge ballot endorsement law). Additionally, the Petitioners allege the law infringes on their right to vote because it constitutes a state invasion of the privacy and sanctity of the voting booth. Based on these allegations, we believe the Petitioners have demonstrated an injury in fact caused by the implementation of I.C. § 34–907B.

■ We must next determine whether the Petitioners have alleged an injury not suffered by all citizens and taxpayers of the State of Idaho. In *Selkirk–Priest Basin Ass'n,* we held the plaintiffs lacked standing because they had failed to "establish a peculiar or personal injury that is different than that suffered by any other member of the public." *Id.* at 834, 919 P.2d at 1035. The State argues a similar situation is presented in this case. That is, any injury to the rights of the Petitioners is no different from the injury suffered by any other Idaho citizen. We believe the Petitioners have met the requirement of demonstrating a distinct injury because they have alleged I.C. § 34–907B adversely impacts only those registered voters who oppose the term limits pledge, or who support candidates who oppose the term limits pledge. Those who support the specific term limits pledge contained in the law are not injured by the use of the ballot legend, and it in fact benefits those who support the term limits pledge by increasing the likelihood their candidate will be elected. Therefore, the Petitioners have alleged an injury not suffered by all citizens and taxpayers alike, and we find the Petitioners have standing to contest the constitutionality of I.C. § 34–907B.

Moreover, we note I.C. § 34–907B(7) specifically grants the primary proponents and sponsors of the statute standing to defend the constitutionality of the statute should it be challenged. We believe the opponents of the statute, the Petitioners in this case, have just as great an interest in the constitutionality of the statute as do the proponents, and it would be anomalous to allow the proponents to be heard, but not the opponents. Therefore, while not dispositive in this case, we believe this potential anomaly also supports the Petitioners' standing to contest the constitutionality of I.C. § 34–907B.

**B. Idaho Code § 34–907B violates the right to suffrage guaranteed by the Idaho Constitution.**

The Petitioners argue I.C. § 34–907B violates the right to suffrage guaranteed by the Idaho Constitution because the statute dictates the way the ballot is written, and therefore violates the integrity of the ballot, as well as the sanctity and privacy of the voting booth. Additionally, the Petitioners argue, because the right to vote is a fundamental right, the standard of review for a law which affects that right is strict scrutiny. Finally, the Petitioners assert I.C. § 34–907B is unconstitutional because the State cannot demonstrate the existence of a compelling interest sufficient to withstand strict scrutiny.

**a. The right of suffrage is a fundamental right.**

■ This Court has not had the opportunity to address directly the question of wheth-

er voting is a fundamental right in Idaho. However, in *Idaho Sch. For Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 850 P.2d 724 (1993), this Court noted it had "stated in *dicta* that voting, procreation, and constitutional safeguards for persons accused of crimes are fundamental rights under the state constitution." *Id.* at 581, 850 P.2d at 732 (citing *Tarbox v. Tax Comm'n*, 107 Idaho 957, 960 n. 1, 695 P.2d 342, 345 n. 1 (1984)). In *Idaho Schools*, we also set forth the test for determining whether a right is a fundamental right under the Idaho Constitution. We held that a right is fundamental under the Idaho Constitution if it is expressed as a positive right, or if it is implicit in Idaho's concept of ordered liberty. *See Idaho Sch. For Equal Educ. Opportunity*, 123 Idaho at 581–82, 850 P.2d at 732–33; *see also Simpson v. Cenarrusa*, 130 Idaho 609, 615, 944 P.2d 1372, 1378 (1997). The Idaho Constitution provides protections for the right of suffrage in two places. First, Article I, § 19 of the Idaho Constitution provides, "[n]o power, civil or military shall at any time interfere with or prevent the free and lawful exercise of the right of suffrage." Additionally, all of Article VI of the Idaho Constitution is dedicated to suffrage and elections. Because the Idaho Constitution expressly guarantees the right of suffrage, we hold that voting is a fundamental right under the Idaho Constitution.

### b. Because the right of suffrage is a fundamental right, strict scrutiny applies.

This Court has previously held that if a fundamental right is at issue, the appropriate standard of review to be applied to a law infringing on that right is strict scrutiny. *See Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990). Under the strict scrutiny standard of review, a law which infringes on a fundamental right will be upheld only where the State can demonstrate the law is necessary to promote a compelling state interest. *See, e.g. Idaho Sch. for Equal Educ. Opportunity*, 123 Idaho at 581, 850 P.2d at 732; *Newlan v. State*, 96 Idaho 711, 713, 535 P.2d 1348, 1350 (1975); *Simpson*, 130 Idaho at 615, 944 P.2d at 1378.

The Respondents argue this Court should not apply strict scrutiny, and instead should apply the more "flexible" standard of review employed by the United States Supreme Court when reviewing state regulations of the electoral process. *See, e.g., Burdick v. Takushi*, 504 U.S. 428, 432–33, 112 S.Ct. 2059, 2062–63, 119 L.Ed.2d 245, 252–53 (1992). The *Burdick* case is, however, distinguishable from the present case. First, *Burdick* did not deal with the Idaho Constitution and instead was decided under the United States Constitution. Secondly, the statute at issue in *Burdick* involved a prohibition on write-in voting, not a legend printed on the ballot itself by the state. Idaho Code § 34–907B, unlike the statute in *Burdick*, is not simply a time, place or manner voting restriction to which a more deferential standard of review might be applied. *See Simpson*, 130 Idaho at 615, 944 P.2d at 1378. The ballot designation here relates to the very basic right of a voter to express support for a candidate within the sanctity of the voting booth. We find no reason to apply a different standard to the exercise of this fundamental right and will apply strict scrutiny to our analysis of I.C. § 34–907B.

### c. I.C. § 34–907B infringes on the fundamental right to vote, and the State has not demonstrated the statute is necessary to promote a compelling state interest.

The Respondents argue I.C. § 34–907B is constitutional because it does not actually infringe on the right to vote. The Respondents contend the right to vote is not infringed because the statute does not prevent any person or group from voting for the candidate of their choice. In fact, the Respondents argue that if anyone's rights are violated, it is the candidate's, not the voter's right that is violated. However, we believe the protection of the integrity of the ballot is integral to the protection of the right to vote. The ballot legend contained in I.C. § 34–907B infringes on the fundamental right to vote, and undermines the integrity of the ballot because it "will interfere with the voters' right to cast their ballots, free from government interference." *Simpson*, 130

Idaho at 616, 944 P.2d at 1379 (Silak, J., concurring). The United States Supreme Court recently held that a political party did not have the right to use the ballot to send a particular political message. *See Timmons v. Twin Cities New Area Party*, 520 U.S. 351, 363, 117 S.Ct. 1364, 1372, 137 L.Ed.2d 589, 601 (1997). In so holding, the Court stated:

> [w]e are unpersuaded, however, by the Party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as fora for political expression.

*Timmons*, 520 U.S. at 363, 117 S.Ct. at 1372, 137 L.Ed.2d at 601. A similar rationale applies in this case. If a political party has no right to send a particularized political message on the ballot, the State should have no right to do so either. To hold otherwise would effectively allow the State to endorse certain candidates on the ballot. While the State does have a legitimate interest in protecting the integrity and fairness of the ballot, such an interest does not justify "instruct[ing] voters which issue, *i.e.* term limits, is most important, and which candidates have, in the state's opinion, supported that issue." *Simpson*, 130 Idaho at 616, 944 P.2d at 1379 (Silak, J., concurring).

The Respondents also argue the ballot legend authorized by I.C. § 34–907B is simply a means of conveying information to voters similar to party and incumbency designations already found on the election ballot. However, there are major differences between party and incumbency designations and the ballot legend at issue in this case. Although party designations may convey some general information about a candidate's political philosophy, the designation does not convey a particularized political message from the State. Additionally, all candidates are treated equally with regard to party designations; that is, the State does not only place the party designation next to the names of Republican candidates, or only next to the names of Democratic candidates. All candidates receive some type of party designation

to help voters identify the candidate of their choice. In contrast, I.C. § 34–907B places the ballot legend language next to the names of only those candidates who have chosen to take the pledge, thereby effectively granting those candidates a state endorsement.

Incumbency designations are similarly distinguishable from ballot legends such as the one contained in I.C. § 34–907B. Such a designation in no way conveys a particularized, state-sponsored political message, and is viewpoint neutral, like party designations, to help a voter identify the candidate of his or her choice. If there is any advantage obtained by candidates, it is the result of the placement of politically neutral, objective information on the ballot, not the result of state approval of a candidate's particular political position.

Furthermore, unlike party and incumbency designations, the information the State seeks to provide in this instance is potentially misleading. Because the legend applies only to the specific pledge authorized by the statute, it may mislead the public as to a candidate's actual position on the issue of term limits. A candidate who supports term limits but does not support the specific term limits format contained in the pledge and who, therefore, does not sign the pledge, receives no ballot legend. This, in turn, creates the impression the candidate does not support term limits, when in fact, he or she does. Thus, the statute creates the very real possibility of state-sponsored, misleading information appearing on the ballot.

Finally, allowing a state official to place a particular political message on the ballot, and to determine the circumstances under which such message should be placed, appears to be in conflict with Article I, § 19 of the Idaho Constitution. That provision states "[n]o power, civil or military, shall at any time interfere with the free and lawful exercise of the right of suffrage." IDAHO CONST., art. I, § 19. While this Court has held this provision does not prevent the State from reasonably regulating elections, we also noted "[t]hose provisions evidently refer to officers, civil or military, being about the polls to meddle with or intimidate electors, and thus to interfere with and prevent them from the

free and lawful exercise of the right of suffrage." *Adams v. Lansdon,* 18 Idaho 483, 491, 110 P. 280, 282 (1910). While I.C. § 34–907B does not require state officers be physically present at the polls to emphasize a candidate has signed the term limits pledge, it nevertheless "has the same practical effect as if an officer were present and conveying that information in person." *Simpson,* 130 Idaho at 618, 944 P.2d at 1381 (Silak, J., concurring).

While the Respondents have argued the State has a legitimate interest in providing voters with information, they have failed to demonstrate such an interest is compelling and the statute is necessary to further that interest. The information the State seeks to make available to the voters is easily obtainable through a variety of other sources, namely media sources and the candidate's own voter information materials. The statute cannot be said to be necessary to provide that information to voters. Additionally, while the State does have a compelling interest in protecting the integrity of the electoral process, the ballot legend authorized by I.C. § 34–907B undermines ballot integrity by "transforming it from a means of choosing candidates to a billboard for political advertising." *Timmons,* 520 U.S. at 364, 117 S.Ct. at 1373, 137 L.Ed.2d at 601–02. Therefore, the ballot legend in I.C. § 34–907B is unconstitutional under the Idaho Constitution because it infringes on the fundamental right to vote, and the State has not demonstrated such an infringement is necessary to promote a compelling state interest. Because we conclude the ballot legend contained in I.C. § 34–907B violates the right of suffrage guaranteed by the Idaho Constitution, we need not address the Petitioners' arguments concerning the constitutionality of I.C. § 34–907B under the free speech provision of the Idaho Constitution, or the right to free speech and right to vote as guaranteed by the United States Constitution. Additionally, because we have decided the constitutionality of I.C. § 34–907B under the Petitioners' right to vote, we need not address the Petitioners' standing to assert the free speech rights of candidates for federal offices.

## C. Severability of the ballot legends.

Subsection (9) of I.C. § 34–907B states that if any "portion, clause or phrase of this act is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, the remaining portions, clauses or phrases shall not be affected, but shall remain in full force and effect." I.C. § 34–907B (9). With the exceptions of subsections (3), (4), and (5), we do not believe the other subsections are affected by our holding in this case. Consequently, those provisions are severable from the unconstitutional ballot legend and will remain in force. I.C. § 34–907B, subsection (3) provides for the placement of the "Signed TERM LIMITS pledge" language not only on the ballot, but also "in all state sponsored voter education material . . . ." Subsection (4) similarly provides for the placement of the "Broke TERM LIMITS pledge" language not only on the ballot, but also in all state sponsored voter education material. Additionally, subsection (5) of I.C. § 34–907B instructs the Secretary of State, or designated election official, to post a copy of the Term Limits Pledge in every polling location. Because the Petitioners have not challenged the constitutionality of these subsections, and these subsections are potentially affected by our decision, we must decide whether they are saved by the severability clause in I.C. § 34–907B. We have previously stated that when "the unconstitutional portion of a statute is not integral or indispensable, [we] will recognize and give effect to a severability clause." *Simpson,* 130 Idaho at 614, 944 P.2d at 1377; *see also Boundary Backpackers,* 128 Idaho at 378, 913 P.2d at 1148. Therefore, we examine subsections (3), (4), and (5) to determine whether the unconstitutional ballot legend is "integral or indispensable" to those portions of the statute.

As to the requirement in subsections (3) and (4) that the "Signed TERM LIMITS pledge" or "Broke TERM LIMITS pledge" language be placed in all state-sponsored voter education materials, we believe the unconstitutional ballot legend is neither integral nor indispensable to these portions of I.C. § 34–907B. The placement of the language in state-sponsored voter education materials

does not implicate the Petitioners' fundamental right to suffrage because it does not appear on the ballot or in the polling area. Additionally, the fact that we have found the ballot legends contained in I.C. § 34–907B unconstitutional does not, in and of itself, impact the constitutionality of the inclusion of the designated language in state-sponsored voter educational materials. Therefore, we will give effect to the severability clause and hold that those portions of subsections (3) and (4) relating to state-sponsored voter education materials may be enforced.

As to subsection (5) requiring the Secretary of State to post a copy of the Term Limits Pledge in every polling location, we believe the unconstitutional ballot legend is integral to this provision. Once the ballot legend is removed from the ballot, the placement of the text of the pledge in polling locations serves no purpose because it no longer provides any relevant information to voters. Therefore, we hold that subsection (5) of I.C. § 34–907B cannot be severed from the unconstitutional portions of the statute and cannot be enforced by the Secretary of State.

### D.  Attorney Fees

The Petitioners have requested this Court award reasonable attorney fees under the private attorney general doctrine. Under this doctrine, attorney fees are justified where (1) the litigation vindicated an important or strong public policy; (2) private enforcement was necessary in order to vindicate the policy and was pursued at significant burden to the plaintiff; and (3) a significant number of people stand to benefit from the decision. *See Hellar v. Cenarrusa*, 106 Idaho 571, 577–78, 682 P.2d 524, 530–31 (1984). While the Petitioners argue these tests have been met in this case, we have repeatedly held that "[w]hether the three-part test for determining to award attorney fees pursuant to the private attorney general doctrine is met requires a factual determination by the trial court." *Boundary Backpackers*, 128 Idaho at 378, 913 P.2d at 1148; *see also Miller v. EchoHawk*, 126 Idaho 47, 49, 878 P.2d 746, 748 (1994). Because of the unique nature of these proceedings, there have been

no factual findings by a trial court, and we do not believe it is the proper exercise of this Court's power to make such findings. Moreover, even were we so inclined, the evidentiary record before us is wholly insufficient to make the necessary factual determinations. Therefore, we decline to award attorney fees under the private attorney general doctrine.

### IV.

### CONCLUSION

For the foregoing reasons, we hold the ballot legends contained in I.C. § 34–907B unconstitutional. When this opinion becomes final, we shall issue a writ of prohibition, prohibiting the Secretary of State from carrying out the directions set forth in subsections (3) and (4) of I.C. § 34–907B as they pertain to the placement of legends on the ballot. The Secretary of State will also be prohibited from carrying out the instructions set forth in subsection (5) of the statute. We award costs, but not attorney fees, to Petitioners.

Chief Justice TROUT, Justices
SCHROEDER and WALTERS concur.

Justice KIDWELL, DISSENTING.

The U.S. Supreme Court has a case pending before it with similar issues, *Gralike v. Cook*, 191 F.3d 911 (8th Cir.1999), that will provide additional insight to the states on how to deal with this kind of voter approved initiative. It would better serve Idaho if this Court withheld a decision until the U.S. Supreme Court ruling provides guidelines or indicates that it is solely a state concern.

The congressional term limits legislation and the question of voluntary ballot legends (additional information placed on the ballot) under consideration in this case may or may not be good governmental policy, however, this is not necessarily a decision for the courts. Unless the Federal or State Constitution is violated, this question must be resolved by the legislature. It should be emphasized that the ballot legends under consideration herein are voluntary for each individual candidate. This voluntary aspect is the unique distinguishing feature from

previous congressional term limits legislation. I am unable to find the necessary constitutional or legal impediments for this Court to invalidate this voluntary term limits, ballot legend legislation. In addition, petitioners have created their own emergency to bring this case and thus do not qualify for the legal remedy sought. Finally, petitioners lack legal standing under existing Idaho law to adjudicate this matter.

For each of these reasons, I respectfully dissent.

## A. The Term Limits Pledge Does Not Violate Either The Idaho Constitution Or The United States Constitution.

The right of suffrage, is a fundamental constitutional right and any infringement upon that right is subject to strict scrutiny legal analysis. The majority opinion recognizes this right and there is no disagreement from me on this bedrock fundamental principle. However, I am unable to find an infringement of that right within the voluntary provisions of the statute before us.

The majority holds that the ballot legends here violate the right of suffrage under the Idaho Constitution. It is important to note that ballot legends are not in and of themselves a problem. It is well accepted that ballot legends indicating a candidate's political party do not violate one's right to suffrage. In addition, in Idaho the judicial ballots contain a ballot legend indicating incumbency. Party designation and incumbency ballot legends undoubtedly influence voters. Perhaps logical consistency would require this Court to invalidate party designations and judicial incumbency ballot legends if a similar extra-ordinary writ were brought by well intentioned individuals. The point is rhetorical, but illustrates the slippery slope the majority opinion creates.

The majority opinion argues that "allowing a state official to place a particular message on the ballot, and to determine the circumstances under which such message should be placed, appears to be in conflict with Article I, section 19 of the Idaho Constitution." In interpreting the Idaho Constitution it is very important to give it the required strict scruti-

ny legal analysis referred to above. Article I, section 19 provides:

"No power, civil or military, shall at any time interfere with or prevent the free and lawful exercise of the right of suffrage."

Obviously, the drafters intended that the government would not interfere with the individual's right to cast his or her vote. The reference to military power obviously means that troops or soldiers cannot in any way be used to discourage or interfere with an individual's right to vote. No such problem is presented here. The reference to civil power undoubtedly indicates that the government cannot place any obstacles or impediments in the way of each person's right to vote at the ballot box. The law here, which began as an initiative, contains specific provisions that provide the candidate with a voluntary choice of whether to take the pledge or not. This is awkward and quite inconvenient, but no legal authority has been uncovered that provides that a voluntary pledge violates a person's right to suffrage.

Idaho Code, title 34, chapter 9 (I.C. §§ 34–907(A) and –907(B)) contains the term limits' voluntary provisions under consideration. Nothing in the two statutes that comprise this scheme sets up a civil or military power that infringes upon or interferes with the right of suffrage. The statutes do not suggest that all congressional aspirants must take the term limits pledge. Further, candidates who have taken the pledge may choose to ignore it. Thus, the contemplated ballot legends "Signed TERM LIMITS pledge" and "Broke TERM LIMITS pledge" are voluntary to the candidates. In this way the pledge creates the opportunity for those who support term limits to help identify the candidate of his or her own choice. Alternatively, the pledge imposes on those who take the pledge the negative affiliation with those voters who do not support term limits.

Put more succinctly, party designations, incumbency designations and voluntary term limits compliance will each cause some voters to vote for the candidate and some to vote against the candidate. As awkward as ballot additions may make the ballot, they do not necessarily become illegal. This is true, even if popular support for some ballot legends

has eroded. As stated above, the State Legislature is the proper forum to address such statutory concerns.

## B. A Writ Of Prohibition Is Not Appropriate Because The Petitioners Had An Adequate Remedy At Law.

The petitioners allege in their petition for a writ of prohibition that due to the "significance and urgency of this action," this Court should "set an expedited briefing and argument schedule." The petitioners claim this "urgency" is the result of the time frame established by Idaho Code section 34–907B. Under Idaho Code section 7–702, a writ of prohibition "may be issued by the supreme court ... in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." I.C. § 7–402.

The majority overlooks the fact that the petitioners had a "plain, speedy and adequate remedy in the ordinary course of law," but chose not to pursue that remedy in a timely manner. I.C. § 34–907B was enacted in November of 1998. At that time the petitioners had the necessary time to pursue a judicial review of the statute.

The affidavit of Petitioner Van Valkenburgh claims that the delay in pursuing a remedy was facilitated by his waiting to see if the Attorney General would take up the issue. However, Petitioner Van Valkenburgh does not explain why he waited until October 26, 1999, eleven months after the enactment of the statute, to bring the matter to the attention of the Attorney General.

Neither am I persuaded by the affidavit of Larry L. Eastland, who joined as a petitioner the day before the matter was to be argued. With the exception of facts relating to his personal political career, Petitioner Eastland's affidavit recites essentially the same allegations and concerns as the other two petitioners. Petitioners obviously want this Court to nullify the voluntary congressional term limits law. However, they are vague on what constitutional basis exists for this Court to exercise its jurisdiction.

The petitioners argue that "an expedited briefing and argument schedule" is necessary because of the looming elections. However, I believe that the necessity of the writ of prohibition is the result of either poor planning or clever manipulation on the part of the petitioners. This Court should not be rushed into considering "novel and important constitutional issues" simply because of the willful procrastination of the petitioners. I am concerned that the majority is creating dangerous precedent by allowing the petitioners to obtain an extraordinary writ based upon an emergency of their own creation.

## C. The Petitioners Do Not Have Standing Because They Lack Personalized Injury.

Standing is the requirement that each party to the suit has such a personal stake in the outcome as to assure the court that a justiciable controversy exists. *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 375, 973 P.2d 142, 146 (1999). In other words, it must be shown that the parties to the lawsuit have a tangible and legally protectable interest in the subject matter of the litigation.

When making a standing inquiry, this Court will focus "on the party seeking relief and not on the issues the party wishes to have adjudicated." *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). Additionally, this Court has held that in order to have standing, the petitioners must allege an injury of some sort. *Selkirk–Priest Basin Ass'n, Inc. v. State*, 127 Idaho 239, 242, 899 P.2d 949, 952 (1995) (SPBA I). This Court has determined that "[A] citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction. In those situations the proper forum to re-shape the challenged governmental policy is the political arena through the voting process." *Miles*, 116 Idaho at 641–42, 778 P.2d at 763–64. "When the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Id.* at 641, 778 P.2d at 763; *see also Boundary Backpackers v. Boundary County*, 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996) (holding that individuals must allege

an injury "not suffered alike by all citizens of the county.").

Applying these standards, the majority holds that because "the Petitioners have *alleged* an injury not suffered by all citizens and taxpayers alike, ... we find the Petitioners have standing to contest the constitutionality of I.C. § 34–907B." (Italics added.) The majority determines that Petitioners have standing because they suffer an injury not suffered by all Idaho voters, namely that the injury is only suffered by those who oppose the term limits pledge.

In addition to relying on the unsubstantiated allegations contained in the Petitioner's affidavits, this conclusion overlooks the clear holding of this Court in *Selkirk–Priest Basin Association, Inc. v. State*, 128 Idaho 831, 919 P.2d 1032 (1996) (*SPBA II*). In that case, the appellants provided affidavits indicating that they used the subject timbered property for hiking and berry picking. This Court held that the affidavits did not provide the appellants with standing to challenge the constitutionality of the statute in question because the "use of the area for recreational or aesthetic enjoyment [does not] create[ ] a particularized injury such that [the appellant's] have a 'distinct palpable injury' not shared in substantially equal measure by all or a large class of citizens." *Id.* at 834, 919 P.2d at 1035.

The facts of the present case appear to be on point with those in *SPBA II*. In both cases, the party claiming standing asserted an injury based upon opposition to the application of a statute. In both cases the claiming party represents the view of only a portion of the voting public. Obviously not every Idaho citizen used the timbered area in *SPBA II* for hiking and berry picking. Likewise not every voting citizen in Idaho opposes the Term Limits Pledge. Therefore, based on the prior decisions of this Court, I would hold that the petitioners lack standing to challenge the constitutionality of I.C. § 34–907B.

The lack of personalized injury is brought out further by an examination of the affidavits filed by the petitioners in support of their motion for a writ of prohibition. Of the three affidavits in support of the motion for a

writ of prohibition, two were filed with the motion and Mr. Larry Eastland's was filed on the eve of oral argument. The first petitioner, Jack Van Valkenburgh, claims that I.C. § 34–907B is "unconstitutional and damaging to the integrity of the electoral process," and that it "violates the candidate's free speech rights." Petitioner Van Valkenburgh alleges that his personal rights of free speech are violated by I.C. § 34–907B because it forces the candidates to speak. The rights that Petitioner Van Valkenburgh appears to want to protect are those of unknown political candidates. His affidavit is unclear as to how his personal rights would be violated.

Similarly, Petitioner Penny Fletcher alleges that the law "violates the rights of voters and candidates for federal office." While Petitioner Fletcher notes that she has been a candidate in the past, she does not claim to be a political candidate in the future. Finally, Petitioner Eastland repeats the generalized claims of the other petitioners that the law "damages the integrity of the electoral process." He and the other petitioners do not explain how the electoral process is damaged or what part of the U.S. or Idaho Constitutions are being violated.

Thus, none of the petitioners allege that the rights being violated are different from those "shared in substantially equal measure by all or a large class of citizens." *SPBA II*, 128 Idaho at 834, 919 P.2d at 1035. Not one of the petitioners allege that they are candidates for elected offices. On the contrary, Petitioner Van Valkenburgh conceded that no "current officeholders or declared candidates were willing to serve in the role of petitioner in this case." The generalized concerns alleged by the petitioners about the "integrity of the electoral process," are the same types of concerns shared by all voters. These generalized concerns of the voting public are the same as those of the appellants in *SPBA II*, where this Court denied standing under just such circumstances.

### D. Conclusion

Therefore, in conclusion, my analysis makes it clear to me that neither Idaho nor

the U.S. laws or Constitutions have been violated as the law exists at this time. Further, the petitioners should have utilized the legal system that was available rather than ask this Court to grant extra-ordinary relief. Finally, the petitioners' case fails because they have not shown any personal or unique injury. It is my view that lawsuits should be utilized to remedy wrongs or injuries; not as a means of political expression.