38 P.3d 121

In the Matter of the Petition To Enjoin Implementation of the Redistricting Plan.

Richard F. SMITH, Douglas Adamson Hancey, Jr., Golden C. Linford, Randolph H. Brown, and John Does 1—100, Petitioners,

v.

IDAHO COMMISSION ON REDISTRICTING, Tom Stuart, Ray Givens, Karl Shurtliff, Dean Haagenson, Kristi Sellers, John Hepworth, Pete T. Cenarrusa, Idaho Secretary of State, and the State of Idaho, Respondents.

In the Matter of the Petition Challenging Legislative Redistricting, Application for Injunctive Relief and Application for Writ of Prohibition.

Bingham County, a political subdivision of the State of Idaho, the Board of Bingham County Commissioners, De Vaughn Shipley, Wayne Brower, Cleone Jolley and John Does 1—100, Petitioners,

v.

Idaho Commission on Redistricting and Pete T. Cenarrusa, Secretary of State of the State of Idaho, Respondents.

Nos. 27760, 27811.

Supreme Court of Idaho.
Boise, October 2001, Term

Nov. 29, 2001.

Rigby, Thatcher, Andrus, Rigby, Kam & Moeller, Chtd., Rexburg, for petitioners Richard F. Smith, Douglas Adamson Hancey, Jr., Golden C. Linford, Randolph H. Brown, and John Does 1—100. Gregory W. Moeller argued.

J. Scott Andrew, Bingham County Prosecuting Attorney, Blackfoot, for petitioners Bingham County, Board of Bingham County Commissioners, De Vaughn Shipley, Wayne Brower, Cleone Jolley and John Does 1— 100. J. Scott Andrew, Bingham County Prosecuting Attorney, argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondents Idaho Commission on Redistricting, Tom Stuart, Ray Givens, Karl Shurtliff, Dean Haagenson, Kristi Sellers, John Hepworth, Pete T. Cenarrusa, Idaho Secretary of State, and the State of Idaho. Thorpe P. Orton, Deputy Attorney General, argued.

TROUT, Chief Justice.

Petitioners Smith et al. (Smith) invoked this Court's original jurisdiction pursuant to article III, § 2, subsection 5 of the Idaho State Constitution and Idaho Appellate Rule 5, seeking injunctive relief against the State of Idaho (the State) regarding redistricting of state legislative districts. In a separate action, Bingham County et al. (Bingham County) filed a substantially similar petition and the two cases were consolidated.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1994, the people of Idaho voted on and passed Senate Joint Resolution 105, which was a proposed constitutional amendment.[1] The amendment created a bipartisan citizens' commission (the Commission) in article III of the Idaho State Constitution that was assigned the task of redistricting. The amendment provides the Commission is required to file a redistricting plan, approved by at least four (4) of its six (6) members with the Secretary of State within at least ninety (90) days of organization, which is in effect until a new plan is required or amended by court order. In 1996, the Idaho Legislature, acting pursuant to the new constitutional amendment enacted statutes providing guidance to the Commission in the task of redistricting. *See* Idaho Code §§ 72–1501 to – 1508.

On August 28, 2001, following the 2000 census, the Commission filed Legislative Plan 66 (L66) with the Secretary of State. Among other things, L66 divides Madison

---

1. Prior to 1994, the legislature created the legislative districts by passing a bill in the same    manner as it would pass any other bill.

County into two districts and it divides Bingham County among three legislative districts.

There are currently thirty-Five (35) legislative districts in Idaho. The total population of Idaho, based on the Year 2000 United States Census is 1,293,953 people. Thus, the ideal size of each district is 36,970 people. As written, the least populated district in L66 is District 5, containing 34,928 people, 5.52% below the ideal size. The most populated district in L66 is District 35, which has 38,881 people and is 5.17% above the ideal size. This results in the maximum population deviation between districts being 10.69%.

On August 31, 2001 Smith filed a "Petition to Enjoin Implementation of the Redistricting Plan" with this Court. The Petition alleges that L66 is unconstitutional and that it is in violation of the Idaho Code and Idaho common law because it impermissibly divides counties to create districts, separates communities with common interests into separate districts, creates districts with too large a population disparity, and was enacted without following appropriate procedures. Subsequently, on September 24, 2001, Bingham County filed a "Petition Challenging Legislative Redistricting, Application for Injunctive Relief and Application for Writ of Prohibition," a similar challenge to L66 with this Court. At the State's request, the two actions were consolidated.

## II.

### THE REDISTRICTING PLAN IS UNCONSTITUTIONAL

#### A. Equal Protection

■ We find L66 violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause requires states to "make an honest and good faith effort to construct [legislative] districts ... as nearly of equal population as is practicable." *Reynolds v. Sims*, 377 U.S. 533, 577, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506, 536 (1964) (interpreting U.S. Const.amend. 14).

■ A redistricting plan that deviates more than 10% in population between the districts constitutes a prima facie case of discrimination under the equal protection clause. *Brown v. Thomson*, 462 U.S. 835, 842–43, 103 S.Ct. 2690, 2696, 77 L.Ed.2d 214, 221–22 (1983). *"The ultimate inquiry then, after a prima facie case of discrimination has been shown is 'whether the legislature's plan 'may reasonably be said to advance [a] rational state policy' and, if so, 'whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits.' "* Id. at 843, 103 S.Ct. at 2696, 77 L.Ed.2d at 222 (quoting *Mahan v.. Howell*, 410 U.S. 315, 328, 93 S.Ct. 979, 987, 35 L.Ed.2d 320, 332 (1973) (emphasis added)).

■ The Idaho Supreme Court has previously been called upon to determine the constitutionality of a redistricting plan in the *Hellar* line of cases, although these cases concerned earlier statutes that vested redistricting in the legislature. The first two times the Idaho Supreme Court heard arguments on the issues, it remanded for further proceedings. *Hellar v. Cenarrusa*, 104 Idaho 858, 664 P.2d 765 (1983) (*Hellar I*); *Hellar v. Cenarrusa*, 106 Idaho 571, 682 P.2d 524 (1984) (*Hellar II*). In *Hellar v. Cenarrusa*, 106 Idaho 586, 588, 682 P.2d 539–541 (1984) (*Hellar III*) the Idaho Supreme Court was again asked to determine the constitutionality of a newly adopted redistricting plan. The Court began its equal protection / representation constitutional analysis by observing that an apportionment plan with a total population deviation of less than 10% is presumptively constitutional. *Id.* at 589, 682 P.2d at 542 (citing *Connor v. Finch*, 431 U.S. 407, 418, 97 S.Ct. 1828, 1839, 52 L.Ed.2d 465, 475–476 (1977); *White v. Regester*, 412 U.S. 755, 764, 93 S.Ct. 2332, 2338, 37 L.Ed.2d 314, 323 (1973). "A plan with larger disparities in population, however, creates a prima facie case of discrimination *and therefore must be justified by the State.*" *Hellar III*, 106 Idaho at 589, 682 P.2d at 542 (citing *Swann v. Adams*, 385 U.S. 440, 444, 87 S.Ct. 569, 572, 17 L.Ed.2d 501, 504–505 (1967)) (emphasis added)).

The *Hellar III* Court held that although it had noted in dicta in *Hellar II* that deviations of up to 41.3% would not necessarily be unconstitutional under the Equal Protection

Clause, if adopted because of unique circumstances (such as to preserve county boundaries), the plan in question violated the Equal Protection Clause of the United States Constitution because there were other plans available that accomplished the same unique objectives and had total population deviations of less than 10%. *Hellar III,* 106 Idaho at 590, 682 P.2d at 543.

■ In the present case, it is not disputed that L66 deviates in population 10.69% between districts, slightly over the 10% limit, constituting a prima facie case of discrimination under the Equal Protection Clause. Moreover, the State has not presented *any* evidence that the reason(s) for the population disparity result from advancement of a rational state policy. Therefore, the presumption of discrimination applies and L66 is unconstitutional in violation of the Fourteenth Amendment to the United States Constitution. Because we hold that L66 is in violation of the Equal Protection Clause, we need not consider the remainder of Petitioners' claims.

**B. The Commission Shall Reconvene to Adopt an Alternative Plan**

■ While we deem it appropriate only to hold that L66 is unconstitutional, ' "[w]here an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." ' *Urrutia v. Blaine County,* 134 Idaho 353, 359, 2 P.3d 738, 744 (2000) (citation omitted). In the present case there will need to be further proceedings in order to adopt a legislative redistricting plan that will pass constitutional muster and we thus set forth the following to guide in that process.

■ First, we note that Idaho Code § 72–1501(2) provides: "A commission formed pursuant to paragraph (1)(b) of this section shall be *reconvened* if, prior to the next *general election,* a court of competent jurisdiction orders the plan adopted by that commission to be revised." I.C. § 72–1501(2) (2000) (emphasis added). The plain meaning of the word "reconvene" is that the same commission that adopted L66 should be responsible

for adopting an alternative plan prior to the next general election.

■ This also makes it appropriate for this Court to address one of Petitioners' other claims that Dean Haagenson was not eligible to serve on the Commission because they argue he was a lobbyist and is thus precluded from service by Idaho Code § 72–1502. This code section, however, only prohibits *registered* lobbyists from serving on the Commission for one year from the time that he or she was a registered lobbyist. When statutory language is clear, the courts must interpret the statute as written. *In re Permit No. 36–7200 v. Higginson,* 121 Idaho 819, 824, 828 P.2d 848, 853 (1992). As evidenced by an affidavit of Ben T. Ysursa, Chief Deputy Secretary of State, Haagenson has not been a registered lobbyist for over one year, so he is not prohibited from serving on the Commission when it reconvenes.

**III.**

**ATTORNEY'S FEES**

■ Petitioners Smith have requested attorney's fees in this action under the private attorney general doctrine. Under this doctrine, attorney's fees are justified where: (1) the litigation vindicated an important or strong public policy; (2) private enforcement was necessary in order to vindicate the policy and was pursued at significant burden to the plaintiff; and (3) a significant number of people stand to benefit from the decision. *See Hellar II,* 106 Idaho at 577–78, 682 P.2d at 530–31.

■ The State argues that attorney's fees are not appropriate under the private attorney general rationale where the Supreme Court has original jurisdiction over a matter as in the instant action. This Court recently wrote that " '[w]hether the three-part test for determining to award attorney fees pursuant to the private attorney general doctrine is met requires a factual determination by the trial court.' " *Van Valkenburgh v. Citizens for Term Limits,* 135 Idaho 121, 129, 15 P.3d 1129, 1137 (2000) (citations omitted) "Because of the unique nature of these proceedings, there have been no factual findings by a trial court, and we do not believe it

is the proper exercise of this Court's power to make such findings." *Id.*

The *Van Valkenburgh* Court continued, however, "even were we so inclined [to award attorney's fees], the evidentiary record before us is wholly insufficient to make the necessary factual determinations," thus leaving the door open that there might be a case in which attorney's fees would be warranted under the private attorney general rationale without requiring findings of fact to be made by a trial court. We find that the case before us is such a case. There are few rights that a free society holds in higher regard than the right to cast a meaningful vote. Moreover, Petitioners Smith pursued the vindication of this right vigorously and the pursuit of such benefited a large number of Idahoans. Finally, this case, as decided, presented little, if any, issues of fact that would require the unique fact finding ability of a trial court to determine if attorney's fees were appropriate. Therefore, we award reasonable attorney's fees to Petitioners Smith under the private attorney general doctrine.

## IV.

## CONCLUSION

We find that L66 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the population of its districts varies more than 10% constituting a prima facie case of discrimination and the State has offered no evidence of legitimate reasons for the deviation. We award attorney's fees to Petitioners Smith under the private attorney general doctrine. Finally, we award costs to Petitioners Smith and Petitioners Bingham County as the prevailing parties.

Justices SCHROEDER, WALTERS and EISMANN, CONCUR.

Justice KIDWELL, Specially Concurring.

While I agree with the analysis and holding of the majority opinion, I write separately because I believe it is necessary to go further and address two of Petitioners Smith's additional claims.

Petitioners Smith contends that Commissioner Dean Haagenson should not have served on the Commission because he is serving as Chairman of the Board for the Idaho Association of Commerce & Industry (IACI). According to its website, IACI's purpose is to serve as "Idaho's most influential business lobby—representing businesses, chambers, and associations statewide on public policy issues in the Idaho Legislature." Petitioners argue his appointment violates I.C. § 72–1502, which prohibits anyone who is or has been a registered lobbyist within the past year from serving on the Commission.

As the majority opinion points out, Haagenson does not violate the *literal* language of the statute. However, I believe his appointment to the Commission goes against the intent and spirit of the law. The statute was passed to prevent those having a stake in the legislature's composition from being a part of the entity responsible for reapportioning Idaho.

Petitioners Smith also argue that I.C. § 72–1505(4) was violated because they were not given an opportunity to view and discuss L66, the plan ultimately adopted by the Commission. They further assert that although the Commission held meetings around the state, the meetings were held before proposed plans were available for discussion. Idaho Code section 72–1505(4) states that "the commission shall hold meetings in different locations in the state in order to maximize the opportunity for public participation."

The Commission complied with the literal language of the statute by holding meetings throughout Idaho, but did not fulfill the spirit of I.C. § 72–1505(4). At no time during the Commission's deliberations was L66 placed before the public for review—in fact, it was adopted at the last minute behind closed doors. The tentative plans that were presented during public meetings did not divide Madison County, thus I am unsure how the citizens could provide feedback on a possible division when one was not contemplated by the plans. At no time during this process did the residents of Madison County have a meaningful opportunity to be heard regard-

ing the division of their county, regardless of the number of public meetings held. By not presenting to the public all plans and options being considered by it, the Commission failed its statutorily prescribed duty to "maximize the opportunity for public participation."