664 P.2d 765

William and Gretchen HELLAR, husband and wife; Samuel A. Rohrer; Douglas E. Long; Bingo Si John; Coeur D'Alene, Idaho, a municipal corporation; Benewah County, a political subdivision of the State of Idaho; and Post Falls Highway District, Plaintiffs-Respondents,

v.

Pete T. CENARRUSA, Secretary of the State of Idaho; Clifford Chapin, in his official capacity as Bonner County Clerk and on behalf of those similarly situated; and State of Idaho, Defendants-Appellants.

No. 14700.

Supreme Court of Idaho.

June 7, 1983.

Jim Jones, Atty. Gen., Thomas C. Frost, and Kenneth R. McClure, Deputy Attys. Gen., for defendants-appellants.

Raymond C. Givens, Coeur d'Alene, for plaintiffs-respondents Hellar.

Susan Mather, Boise, for intervenors.

HUNTLEY, Justice.

By this appeal appellants seek a review of an order of the district court which held that the present apportionment of the Idaho legislature is unconstitutional as violative of Idaho Constitution art. 3, § 5, which reads:

"SENATORIAL AND REPRESENTATIVE DISTRICTS—A senatorial or representative District, when more than one county shall constitute the same, shall be composed of contiguous counties, *and no county shall be divided in creating such districts*." (Emphasis supplied.)

It is undisputed that thirty-four of the thirty-five legislative districts created by House Bill 830 of the second session of the Forty-fifth Legislature (codified as I.C. § 67–202) contain a portion of a divided county. Twenty-two of the thirty-five legislative districts join all or a portion of one county with portions of one or more other counties, in apparent direct violation of the constitutional prohibition against dividing counties to form senatorial or representative districts.

Following receipt of 1980 federal census information in March, 1981, the legislature was convened in special session in July 1981 for the purpose of reapportioning itself. The session produced a reapportionment plan in Senate Bill 1004, which was vetoed by the governor. The second regular session of the Forty-Sixth Legislature passed another plan in House Bill 530, which was also vetoed. That session then produced House Bill 830, establishing the present apportionment scheme.

In reapportionment for both houses of a bicameral state legislature, the United States Supreme Court has mandated that the overriding objective must be substantial equality of population among the various districts so that the vote of any citizen is approximately equal in weight to that of any other citizen in the state.

There is no doubt that prior to the enactment of HB 830 the apportionment of the Idaho legislative districts violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution when viewed in light of the 1980 census. The population variations ran from 44,793 in district 2, to 17,930 in district 34, and a new districting plan was constitutionally necessary in order to achieve equal representation. House Bill 830 does appear to meet the equal representation requirement of the United States Constitution.

This action was initiated in April 1982 for declaratory judgment and injunctive relief. The plaintiffs challenged the reapportionment plan as unconstitutional under art. 3 § 5 of the Idaho Constitution and sought a preliminary and permanent injunction against conducting the 1982 primary and general elections.

The second amended complaint challenged the statute on the basis of the division of counties, the division of the Coeur d'Alene Indian Reservation into four separate districts, and the failure to follow traditional municipal, county, and geographical boundaries. Plaintiffs filed a motion for a preliminary injunction restraining the defendants from conducting the May 25, 1982, primary which was set for hearing on May 3, 1982, along with several defense motions. By written order dated May 4, 1982, the Court denied plaintiffs' motion to enjoin the primary election, but set the matter down for an additional hearing on May 17, 1982, for hearing on plaintiffs' motion for a preliminary injunction to enjoin the holding of the general election in November of 1982. In the May 4th order, the court also granted plaintiffs' motion for permission to file a second amended complaint in the form of a class action joining the county clerks of the forty-four counties as defendants in the action. After the May 17, 1982, hearing the Court entered its order denying plaintiffs' motion to enjoin the general election in November, 1982, but rendered a partial declaratory order that H.B. 830 violates Art. 3, § 5, of the Idaho Constitution, and that the State of Idaho can be divided into legislative districts providing for equal representation in order to comply with the mandates of the United States Constitution without violating county boundaries. The Court ordered that "with respect to the issues determined by the above order, it is hereby certified that the above order shall be final . . ." under I.R.C.P. 54(b). The trial court further ordered:

"2. The Court shall retain jurisdiction of this case for further proceedings and modification of this Order, if need be. 3. In the event that the next regularly convened Idaho State Legislature does not pass a constitutional, legislative redistricting law pursuant to this Opinion, and provide for a Special Election thereunder during 1983, this Court will, *after a deadline of April 1, 1983,* enter a Court Ordered Legislative Redistricting and Order for a Special Legislative Election. 4. With respect to the issues determined by the above Order, it is hereby certified that the above Order shall be a final Order upon which an appeal may be taken as provided by the Idaho Appellate Rules and Idaho Rule of Civil Procedure 54(b)."

The 1983 legislative session adjourned on April 14, 1983, and as of that date the legislature had taken no action to reapportion by the court-ordered April 1, 1983, deadline. No stay of the trial court's order was sought by either party.

This court stated in *State ex rel. Brassey v. Hanson,* 81 Idaho 403, 342 P.2d 706 (1959):

"It is fundamental that the judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases. . . .

" 'In the case of statutes passed by the Legislative Assembly and assailed as un-

constitutional the question is not whether it is possible to condemn, but whether it is *possible to uphold;* and we stand committed to the rule that a statute will not be declared unconstitutional unless its nullity is placed, in our judgment, *beyond reasonable doubt.'*" 81 Idaho at 409, 342 P.2d 706 (Emphasis added).

Since HB 830, on its face, violates the Idaho Constitution, its only basis for survival would be that, where art. 3, § 5, of the Idaho Constitution conflicts with the equal representation mandate of the Fourteenth Amendment of the U.S. Constitution, the latter will prevail. However, in order for the Fourteenth Amendment to displace the Idaho constitutional provision, there must be no possibility of compliance with both.

In *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 1385, 12 L.Ed.2d 506 (1964), the United States Supreme Court held:

"as a basic constitutional standard, the Equal Protection Clause requires that the seats of both houses of a bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State."

However, the Supreme Court noted:

"A State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible, and provide for compact districts of contiguous territory in designing a legislative apportionment scheme. Valid considerations may underlie such aims. Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering. Single-member districts may be the rule in one State, while another State might desire to achieve some flexibility by creating multimember or floterial districts. Whatever the means of accomplishment, the overriding objective must be substantial equality *of population among the var-*ious districts, so that the vote of any

citizen is approximately equal in weight to that of any other citizen in the State." 84 S.Ct. at 1390.

Noting that Idaho "is uniquely situated by virtue of its topography, social, economic, and religious interests," the district court set out several considerations which might underlie the state's interest in maintaining the integrity of its county boundaries, as evinced by Idaho Const. art. 3, § 5.

"Idaho stretches over 600 miles from the Canadian border on the north to the Utah-Nevada border on the south. A mountain range bisects much of the State running in a north-south direction. Transportation is almost impossible from east to west except along the Snake River in the south and difficult from north to south.

. . . .

Idaho lies in two time zones. There are three major regions in Idaho bound together by transportation, economics, and communications. Our three major universities occupy a place in each region.

Facetiously, it has been said that Idaho has three capitals, i.e., Boise, in the Southwest; Spokane, Washington in the north; and Salt Lake City, Utah in the southeast.

The Court can take judicial notice that North Idaho is more closely tied to Spokane, Washington, for social, economic, and transportation reasons than to other parts of the State of Idaho.

In order to promote the interests of each area in the three major areas of the State, the various counties of the State have always been the political, geographic, economic, and social unit upon which people depended for the functioning of their local governments.

Property taxes are collected on a county basis and various taxing districts rarely, if ever, cross county lines.

Law enforcement is based on the county sheriff's department and various city police departments within that county."

In *Reynolds v. Sims, supra,* the Supreme Court noted that, with respect to the apportionment of state legislative districts,

"mathematical exactness or precision is hardly a workable constitutional requirement," and that,

"So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature." 84 S.Ct. at 1391.

The preservation of historical boundary lines and political subdivisions has been recognized as justification for some deviation from the basic requirement that legislative districts be as equal in population as possible. *Mahan v. Howell*, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973).

The question confronting the district court in this action was whether a reapportionment plan could be devised which maintained inviolate county boundaries yet was within constitutionally tolerable limits of population deviation from district to district, pursuant to the *Reynolds v. Sims* line of cases. After reviewing five reapportionment plans submitted by the plaintiffs, the district court concluded that a redistricting plan could be adopted with only minor variation in population, but which would follow county boundary lines, and thus accomodate both state and federal constitutional requirements. Some of the plans utilized multimember districts and floterial districts, both of which devices have earlier been used in Idaho and pass muster of both the United States and Idaho Constitutions.

In addition, the City of Boise, as an intervenor, urged an interpretation of Idaho Const. art. 3, § 5, which would prohibit the division of counties in the formation of legislative districts only where more than one county constitutes a district. The section provides that a "senatorial or representative district, when more than one county shall constitute the same, shall be composed of contiguous counties, and no county shall be divided in creating *such* districts." (Emphasis added.) The interpretive key is the word "such." The inclusion of that specific pronoun suggests that the prohibition does not extend to all legislative districts, but only to *such* districts which are composed of "more than one county." The pronoun must have an antecedent, and the prior reference to districts made up of more than one county clearly supplies that antecedent.

We agree with the interpretation of art. 3, § 5 urged by the City of Boise. Such construction is not only a plain and obvious reading of the section, but also comports with the suggestion of the United States Supreme Court against the use of multimember districts unless there are unique factors that would justify use of such districts. *See, Connor v. Johnson*, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971), and *Chapman v. Meier*, 420 U.S. 1, 95 S.Ct. 751, 42 L.Ed.2d 766 (1975). This interpretation of Idaho Const. art. 3 § 5 also facilitates obtaining smaller population deviations from district to district because a single county could contain several districts.

We uphold the district court's declaratory order that Idaho Const. Art. 3, § 5, is not necessarily invalidated by the equal protection clause of the fourteenth amendment of the United States Constitution, and the decisions of the United States Supreme Court earlier discussed herein, relating to equality of voting. The evidence produced by the plaintiffs at the May 17, 1982, hearing in support of their motion for preliminary injunction to enjoin the holding of the general election in November, 1982, presented a *prima facie* case of invalidity of H.B. 830 and justified the district court in setting the matter for further hearing after the Idaho legislature had an opportunity to pass a legislative redistricting law which satisfied the requirements of the district court's declaratory opinion.

Appellants further assert that the trial court erred in failing to consider a certain affidavit submitted by them immediately following the preliminary injunction hearing. It is unnecessary to determine whether the district court erred in that regard because, first, the district court denied the preliminary injunction, and second, the dis-

trict court's order stated that "the court shall retain jurisdiction of this case for further proceedings and modification of this order if need be."

The district court in its memorandum decision entered on June 7, 1982, denied the plaintiffs' motion for preliminary injunction to restrain the holding of the general election, but entered its declaratory order holding that H.B. 830 violated Art. 3, § 5, of the Idaho Constitution, and certifying that partial order as being final. At the time of the hearing of the preliminary injunction on May 17, 1982, the time for the defendants to file their answers to the plaintiffs' second amended complaint had not elapsed, and in fact no answers had been filed on behalf of any of the defendants. Accordingly, on remand, the defendants should be given the opportunity to file their answers asserting any defenses which they may have, and to submit additional evidence on the issue of the constitutionality of H.B. 830 if they deem it appropriate.

Finally, plaintiffs request the Court to assess attorney fees in prosecuting this appeal. A similar request made to the district court was denied because

"the court is of the opinion that a resolution of all of these issues is somewhat premature.... This case is yet in its early stages and the court cannot, in its discretion, determine which party prevailed or did not prevail in the multitude of issues raised herein.

"Therefore, prior to the court considering the various bases for granting an award of attorney fees to the plaintiff, the case must be concluded and a determination of who prevailed and on what issues made."

Since this matter must be remanded to the district court for further proceedings, it is premature to determine at this point whether or not plaintiffs might be entitled to attorney fees on appeal. Accordingly, plaintiffs' request for attorney fees is denied at this time. After conclusion of the proceedings on remand and after the entry of any final order or judgment the trial court shall make the determination of the right of any party to attorney fees, including fees incurred in this appeal.

No costs allowed.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

Although I agree with much said in the majority opinion, I am puzzled and uncomfortable with the ultimate result and the purpose of the remand. As I view the majority opinion, it is ordered that upon remand the defendants may submit evidence as to the unconstitutionality of H.B. 830. That question, it seems to me, involves only our constitutional prohibition against splitting counties, Idaho Const., art. 3, § 5, and clearly H.B. 830 splits counties. The larger, and in my mind the only, question is whether the *Reynolds v. Symms* progeny of cases invalidates art. 3, § 5 forbidding the splitting of counties. While essentially a question of law, it also involves the determination of factual matters. Perhaps unfortunately but nevertheless clearly, if the provision of Idaho's Constitution conflicts with the United States Constitution, the Idaho constitutional provision must fall. There is no evidence that H.B. 830 fails to comport with the United States constitutional mandate of one-man one-vote. Just as clearly, H.B. 830 conflicts with the Idaho Constitution. The ultimate question then becomes, can Idaho be legislatively reapportioned in such manner as to comport with both the Idaho and United States Constitutions? If Idaho can be so reapportioned as to comport with both constitutions, then H.B. 830 must fail. If Idaho cannot be so reapportioned as to comport with both constitutions, then the United States Constitution controls, art. 3, § 5 of our constitution must fall and H.B. 830 survives. This I deem to be the only question for resolution at the remand stage.

If, on the basis of a full evidentiary hearing on that question, the trial court determines that H.B. 830 must fail, then it would seem appropriate (hopefully following review by this Court) that the legislature be ordered to reapportion. If the legislature

failed to so reapportion, then the judiciary might be required to become involved in the actual reapportionment process. I believe, however, that reapportionment by the judiciary should be only a last resort. The United States Supreme Court has continually recognized the need for judicial restraint and respect for the legislature as a coordinate branch of government. Particularly do I believe judicial restraint should be exercised in this delicate area of courts forcing a legislature to substantially reorganize itself and legislate some of its membership out of existence. Our wisdom, if any we have, is different from that of the legislature in the numbers necessary to reach consensus and also in the factors to be considered. Those very factors enunciated by the district judge which make Idaho unique might be better weighed by a large member body with representation from all the areas of those differences rather than by a single district judge or even by the membership of this Court.

Hopefully, if necessary, the legislature will so act. With the cause pending on appeal in this Court, there has been no real need nor impetus for legislative action. I would not rush to intrude the judiciary into what I conceive to be a clear legislative process.