# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39373

<table>
<tr><td>

TWIN FALLS COUNTY, a political sub-
division of the State of Idaho; the BOARD
OF TWIN FALLS COUNTY
COMMISSIONERS; the CITY OF TWIN
FALLS; the CITY OF HANSEN; the CITY
OF FILER; the CITY OF BUHL; TETON
COUNTY, a political subdivision of the
State of Idaho; the BOARD OF TETON
COUNTY COMMISSIONERS; OWYHEE
COUNTY, a political subdivision of the State
of Idaho; the BOARD OF OWYHEE
COUNTY COMMISSIONERS; KOOTENAI
COUNTY, a political subdivision of the State
of Idaho; and the BOARD OF KOOTENAI
COUNTY COMMISSIONERS,

    Petitioners,

v.

IDAHO COMMISSION ON
REDISTRICTING, and BEN YSURSA, the
Secretary of State of the State of Idaho,

    Respondents.

</td><td>

Boise, January 2012 Term

2012 Opinion No. 16

Filed: January 18, 2012

Stephen W. Kenyon, Clerk

</td></tr>
</table>

Petition challenging the legislative redistricting plan adopted by the commission for reapportionment.

The plan violates the Idaho Constitution and is therefore <u>invalid</u>.

Grant P. Loebs, Twin Falls County Prosecuting Attorney, Twin Falls, argued for petitioners.

Brian Kane, Assistant Chief Deputy Attorney General, Boise, argued for respondents.

---

EISMANN, Justice.

This is a petition challenging the constitutionality of Plan L 87, a legislative redistricting plan adopted by the commission for reapportionment. We hold that the plan is invalid because it violates Article III, section 5, of the Idaho Constitution by dividing more counties than necessary to comply with the Constitution of the United States. The commission for reapportionment is directed to reconvene to adopt a revised plan.

## I.

## Factual Background

On November 8, 1994, the electors of the State of Idaho ratified an amendment to Article III, section 2, of the Constitution of the State of Idaho to remove redistricting from the legislature and to transfer it to a six-person, bipartisan commission to reapportion the legislature and/or to create new congressional district boundaries. The leaders of the two largest political parties in each house of the legislature and the state chairs of the two largest political parties in the State each appoint one person to the commission. Idaho Const. Art. III, § 2(2). The Secretary of State forms a commission when there is a new federal census or when necessary due to a decision of a court of competent jurisdiction. *Id*.

As a result of the 2010 federal census, the Secretary of State formed a commission for reapportionment on June 7, 2011. That commission held fourteen public hearings around the state, but was unable to agree upon a plan for either legislative or congressional redistricting before the expiration of the ninety-day time limit set by Idaho Code section 72-1508. Therefore, the Secretary of State formed a new commission.

The new commission convened on September 28, 2011, and adopted the record and proceedings of the prior commission. The new commission then held public hearings in Idaho Falls, Coeur d'Alene, and Boise. On October 14, 2011, it unanimously adopted a legislative redistricting plan entitled "Plan L 87," and three days later it adopted a plan to redraw congressional boundaries entitled "Plan C 52." On November 16, 2011, Petitioners filed this proceeding challenging Plan L 87. On November 23, 2011, this Court gave Petitioners fourteen days within which to file their opening brief, Respondents fourteen days thereafter within which to file a responding brief, and Petitioners seven days thereafter within which to file a reply brief. We also scheduled oral argument for January 5, 2012.

## II.

## Does Plan L 87 Violate Article III, Section 5, of the Idaho Constitution?

When the Constitution of the State of Idaho was ratified in 1890, Article III, section 5, prohibited a county from being divided in order to create a senatorial or representative district.[1] As originally ratified, the Constitution also provided in Article III, section 4, that "each county shall be entitled to one representative." In 1911, the electors ratified an amendment to Article III, section 2, so that it provided, "The senate shall consist of one (1) member from each county."

In 1962, a lawsuit was filed in federal court challenging sections 2, 4, and 5 of Article III. *Hearne v. Smylie*, 225 F.Supp. 645 (D. Idaho 1964). The three-judge court that was convened to hear that case dismissed it without addressing the merits. *Id*. at 656. While that case was on appeal, the United States Supreme Court decided that it wanted both houses of bicameral state legislatures apportioned by population. *Reynolds v. Sims*, 377 U.S. 533 (1964). It reversed the judgment in *Hearne* and remanded the case for further proceedings consistent with *Reynolds*. *Hearne v. Smylie*, 378 U.S. 563 (1964). The Supreme Court also has held that an apportionment plan that deviates more than ten percent among the various districts is prima facie unconstitutional. *Brown v. Thomson*, 462 U.S. 835, 842-43 (1983).

In response to the *Reynolds* decision, the Idaho legislature proposed, and on November 4, 1986, the electors ratified, amendments to sections 2, 4, and 5 of Article III, of the Idaho Constitution. The 1986 amendment to section 5 included a provision stating that "a county may be divided in creating districts only to the extent it is reasonably determined by statute that counties must be divided to create senatorial and representative districts which comply with the constitution of the United States."[2] After the ratification of the 1986 amendment, the legislature

---

[1] Article III, section 5, of the Constitution of the State of Idaho originally provided, "A senatorial or representative district, when more than one county shall constitute the same, shall be composed of contiguous counties, and no county shall be divided in creating such districts."

[2] As a result of the 1986 amendment, Article III, section 5, of the Constitution of the State of Idaho now reads:

> A senatorial or representative district, when more than one county shall constitute the same, shall be composed of contiguous counties, and a county may be divided in creating districts only to the extent it is reasonably determined by statute that counties must be divided to create senatorial and representative districts which comply with the constitution of the United States. A county may be divided into more than one legislative district when districts are wholly contained within a single county. No floterial district shall be created. Multi-member districts may be created in any district composed of more than one county only to the extent that two representatives may be elected from a district from which one senator is elected. The provisions of this section shall apply to any apportionment adopted following the 1990 decennial census.

enacted Idaho Code section 72-1506, which is now the statute referenced in that amendment. *Bonneville County v. Ysursa*, 142 Idaho 464, 473, 129 P.3d 1213, 1222 (2005).

There is a hierarchy of applicable law governing the development of a plan for apportioning the legislature: The United States Constitution is the paramount authority; the requirements of the Idaho Constitution rank second; and, if the requirements of both the State and Federal Constitutions are satisfied, statutory provisions are to be considered. A lower ranking source of law in this hierarchy is ineffective to the extent that it conflicts with a superior source of law. *Bingham County v. Idaho Comm'n for Reapportionment,* 137 Idaho 870, 874, 55 P.3d 863, 867 (2002). Thus, the hierarchy of requirements governing a plan for apportioning the legislature is as follows:

First, the plan must comply with what the United States Supreme Court has stated to be the requirements of the Equal Protection Clause of the Fourteenth Amendment to the Constitution. "A redistricting plan that deviates more than 10% in population among the districts is prima facie unconstitutional under the Equal Protection Clause." *Bingham County*, 137 Idaho at 872, 55 P.3d at 865 (2002). "A plan with larger disparities in population, however, creates a prima facie case of discrimination and therefore must be justified by the State." *Brown*, 462 U.S. at 842-43. If a deviation of more than ten percent is not justified by the State, the plan is unconstitutional. *Smith v. Idaho Comm'n on Redistricting*, 136 Idaho 542, 544, 38 P.3d 121, 123 (2001). The commission is not required to draw legislative districts that all have precisely the same population numbers. Some discretion is inherent in the percentage of deviation that presumptively complies with the Supreme Court's requirements.

Second, the plan must comply with the requirements of the Idaho Constitution. Article III, section 5, states that "a county may be divided in creating districts only to the extent it is reasonably determined by statute that counties must be divided to create senatorial and representative districts which comply with the constitution of the United States." "We have interpreted this provision to mean that the constitution 'prohibits the division of counties, except to meet the constitutional standards of equal protection.' " *Bonneville County v. Ysursa*, 142 Idaho 464, 471, 129 P.3d 1213, 1220 (2005) (quoting *Bingham County v. Comm'n for Reapportionment*, 137 Idaho 870, 878, 55 P.3d 863, 871 (2002)). This provision places a limitation on the total number of counties that can be divided by a legislative redistricting plan. The word "only" means "solely." *Carstens Packing Co. v. Unemployment Comp. Div. of Indus.*

4

*Accident Bd.*, 65 Idaho 370, 376, 144 P.2d 203, 206 (1943). A county can be divided *solely* for one reason — "to the extent it is reasonably determined by statute that counties must be divided to . . . comply with the constitution of the United States." Idaho Const. Art. III, § 5 (emphasis added). Dividing a county for other reasons is not permitted. Compliance with this provision in Article III, section 5, cannot be determined by looking at each county division in isolation. The provision does not state that "a county may be divided . . . only to the extent that it is reasonably determined . . . that *the county* must be divided to . . . comply with the constitution of the United States." Rather, it states that "*a* county [singular] may be divided . . . *only to the extent* it is reasonably determined by statute that *counties* [plural] *must be divided* to . . . comply with the constitution of the United States." Idaho Const. Art. III, § 5 (emphases added). Likewise, the provision does not say "only *if* it is reasonably determined . . . that counties must be divided." In other words, it does not state that the prohibition on dividing counties disappears once it is determined that at least one county must be divided to comply with the Constitution. It says "only *to the extent* it is reasonably determined . . . that counties must be divided." (Emphasis added.) The "only to the extent" language would be meaningless unless it is a limitation on the total number of counties that can be divided. When district lines are drawn, a particular county is either divided or it is not. There is no middle ground. A county cannot be almost divided. Looking at the division of one county in isolation would not show the extent to which counties (plural) must be divided in order to comply with the Supreme Court's requirements. The extent to which counties (plural) must be divided to comply with the Federal Constitution can be determined only by counting the total number of counties divided under the plan. If one plan that complies with the Federal Constitution divides eight counties and another that also complies divides nine counties, then the extent that counties must be divided in order to comply with the Federal Constitution is only eight counties. It could not be said that dividing one more county was necessary to comply with the Constitution.

Third, the requirements of Idaho Code section 72-1506 "are subordinate to the Constitutional standard of voter equality and the restrictions in the Idaho Constitution upon splitting counties except to achieve that voter equality." *Bingham County,* 137 Idaho at 874, 55 P.3d at 867. That statute contains mandatory provisions and advisory provisions. The words "must" and "shall" are mandatory, *Rife v. Long*, 127 Idaho 841, 848, 908 P.2d 143, 150 (1995),

5

and the word "should" is not, *Neighbors for a Healthy Gold Fork v. Valley County*, 145 Idaho 121, 134, 176 P.3d 126, 139 (2007).  The mandatory provisions are as follows:

> (1) The total state population as reported by the U.S. census bureau, and the population of subunits determined therefrom, shall be exclusive permissible data.
> (2) To the maximum extent possible, districts shall preserve traditional neighborhoods and local communities of interest.
> (3) Districts shall be substantially equal in population and should seek to comply with all applicable federal standards and statutes.[3]
> . . . .
> (5) Division of counties shall be avoided whenever possible. . . .
> (6) To the extent that counties must be divided to create districts, such districts shall be composed of contiguous counties.
> (7) District boundaries shall retain the local voting precinct boundary lines to the extent those lines comply with the provisions of section 34-306, Idaho Code.  When the commission determines, by an affirmative vote of at least five (5) members recorded in its minutes, that it cannot complete its duties for a legislative district by fully complying with the provisions of this subsection, this subsection shall not apply to the commission or legislative redistricting plan it shall adopt.
> (8) Counties shall not be divided to protect a particular political party or a particular incumbent.
> (9) When a legislative district contains more than one (1) county or a portion of a county, the counties or portion of a county in the district shall be directly connected by roads and highways which are designated as part of the interstate highway system, the United States highway system or the state highway system.  When the commission determines, by an affirmative vote of at least five (5) members recorded in its minutes, that it cannot complete its duties for a legislative district by fully complying with the provisions of this subsection, this subsection shall not apply to the commission or legislative redistricting plan it shall adopt.

I.C. § 72-1506.

The remaining provisions of the statute are not mandatory.  They are merely advisory.[4]

---

[3] Although the last clause uses "should" rather than "shall" or "must," as a practical matter compliance with applicable federal standards and statutes is a mandatory requirement.

[4] The advisory provisions are:  "To the maximum extent possible, the plan should avoid drawing districts that are oddly shaped," I.C. § 72-1506(4), and "In the event that a county must be divided, the number of such divisions, per county, should be kept to a minimum," I.C. § 72-1506(5).

Likewise, the statute provides that subsections (7) and (9) are not mandatory if five members of the commission vote that the commission cannot complete its duties by fully complying with them.

Plan L 87 adopted by the commission complies with the first requirement. It deviates less than ten percent in population among the districts. However, the plan does not comply with the second requirement. As stated above, Article III, section 5, of the Idaho Constitution provides that "a county may be divided in creating districts *only to the extent* it is reasonably determined by statute that counties must be divided to create senatorial and representative districts which comply with the constitution of the United States." (Emphasis added.) That provision is emphasized in Idaho Code section 72-1506(5), which states, "Division of counties shall be avoided whenever possible." This provision is mandatory. As shown by the history of Article III, section 5, and its current wording, the only reason for dividing counties is to comply with the decisions of the United States Supreme Court. If, for example, only seven counties needed to be divided in order to comply, then a plan that divides eight counties would violate these constitutional and statutory provisions.

Plan L 87 divides twelve counties. The commission considered and rejected other plans that comply with the Federal Constitution and divide fewer counties. Thus, Plan L 87 does not divide counties *only to the extent* that counties must be divided to comply with the Federal Constitution. It likewise does not avoid dividing counties whenever possible in violation of Idaho Code section 72-1506(5). It therefore violates Article III, section 5, of the Idaho Constitution and the statute. We are not holding that the commission must adopt any particular plan. The plans submitted to the commission show that there are different ways to draw legislative districts that comply with both the State and Federal Constitutions. The commission certainly has the discretion to reject plans that have been submitted and draw boundaries in another manner that complies with both Constitutions.

Respondents argue that "[o]nce the Commission has exercised this discretion, the inquiry is limited to whether 'the split was done to effectuate an improper purpose or whether it dilutes the right to vote.' " (Quoting from *Bonneville County v. Ysursa*, 142 Idaho 464, 472, 129 P.3d 1213, 1221 (2005)). Respondents take that quotation out of context. We were addressing the commission's discretion in deciding which of two counties to split in order to comply with the

7

Federal Constitution, not whether it has the discretion to disregard the requirements of the Idaho Constitution.

In performing its duties, the commission must exercise discretion in various matters. However, as admitted by the Respondents during oral argument, Article III, section 5, limits the commission's discretion. It does not give the commission unbridled discretion in deciding how many counties to divide. The Respondents argue that the commission found that dividing twelve counties was necessary. However, "this Court must observe its imperative duty fearlessly to interpret the law as made, and never permit, if it be in our power to prevent, any infraction of the Constitution which we are sworn to uphold, support and maintain." *Jewett v. Williams*, 84 Idaho 93, 106, 369 P.2d 590, 598 (1962) (citing *Pyke v. Steunenberg*, 5 Idaho 614, 619, 51 P. 614, 614 (1897)). "[A] county may be divided in creating districts only to the extent it is reasonably determined by statute that counties must be divided to . . . comply with the constitution of the United States." Idaho Const. Art. III, § 5. This constitutional provision is a restriction on the commission's discretion, not a grant of discretion. The commission can certainly exercise discretion to the extent that it is not limited by the Constitution or by statute, but it does not have the discretion to exceed the limits imposed by either the Constitution or a statute.

That constitutional provision requires that the total number of divided counties in a legislative redistricting plan shall be the minimum number required to comply with the Federal Constitution. Because Plan L 87 divides more counties than is required to do so, it violates Article III, section 5, of the Idaho Constitution and is therefore invalid. The commission must therefore reconvene and adopt a revised plan. I.C. § 72-1501(2). We need not address the alleged statutory violations in Plan L 87 because the commission will have to adopt a revised plan.

Petitioners ask that we "immediately issue an appropriate writ of prohibition or appropriate injunction enjoining implementation and enforcement of Plan L87 as adopted by the Idaho Commission on Reapportionment" and that we "enter[] an order establishing legislative districts in the state of Idaho which will comply with Constitutional and statutory requirements." We decline at this point to do either. We have no reason to believe that the commission will not perform its duty to adopt a plan that complies with mandatory constitutional and statutory provisions. Accordingly, pursuant to Idaho Code section 72-1501(2), this Court orders that Plan L 87 be revised.

8

## VII.

## Conclusion

We hold that Plan L 87 adopted by the commission for reapportionment violates Article III, section 5, of the Idaho Constitution and must therefore be revised.

Chief Justice BURDICK, Justices W. JONES and HORTON **CONCUR.**

J. JONES, J., dissenting.

I respectfully dissent from the Court's opinion because I read Article III, §§ 2 and 5 of the Idaho Constitution to grant the Commission a good deal of discretion in developing its redistricting plan, and I believe this Court should, as it has in the past, grant substantial deference to determinations made by the Commission. In my view, the Commission performed in an exemplary fashion in developing Plan L87. It made detailed findings of fact, clearly explaining how the plan was developed, the steps it took to comply with one-person, one-vote requirements, its rationale for dividing or splitting counties, and how it applied the legislative guidelines in I.C. § 72-1506.

On the other hand, the Petitioners, although disagreeing with several of the county splits made by the Commission, failed to present any competent evidence to cast doubt upon the validity of the Commission's findings. Petitioners presented no competent evidence showing that a lesser number of splits could be accomplished, while observing the requirements of the federal and state constitutions, as well as the Legislature's guidelines. Petitioners do not refer in their papers to any plan in the record that contains a fewer number of splits than L87. Petitioners proffered a plan that they claim would accomplish reapportionment with just six county splits but, when viewed based upon the criteria in the record for determining splits, their plan contains eight county splits. That compares with twelve splits for Plan L87. Petitioners did not submit their proposed plan to the Commission, so it is not a part of the Commission's record. Petitioners' plan is not authenticated, there is no indication of who prepared it, what criteria were considered, or who determined where and why splits should be made. Therefore, it is not competent evidence before the Court.

9

Although I am tempted to say the petition should be dismissed for failure to present a meritorious case, two legal issues are presented that deserve a definitive answer. First, what does Article III, § 5 of the Idaho Constitution mean when it says a county may be divided "only to the extent it is reasonably determined by statute that counties must be divided" in order to comply with the U.S. Constitution? Second, what role does the Idaho Legislature have in the reapportionment process following the adoption of the 1994 amendment to Article III, § 2 of the Constitution?

In order to determine what Article III, § 5 means, it must be considered in its historical context. As originally adopted, this provision read:

> A senatorial or representative district, when more than one county shall constitute the same, shall be composed of contiguous counties, and no county shall be divided in creating such districts.

This flat prohibition against dividing counties was rendered practically impossible as a result of *Reynolds v. Sims*, 377 U.S. 533 (1964) and the U.S. Supreme Court's subsequent decisions requiring that apportionment of state legislatures give primary emphasis to equal representation. Those one-person, one-vote decisions effectively rendered Idaho's apportionment scheme unconstitutional. At that time, legislative apportionment was the responsibility of the Idaho Legislature, based on Article III, §§ 2 and 4 of the Idaho Constitution. From November of 1912 until November of 1986, Article III, § 2 provided:

> The senate shall consist of one (1) member from each county. The legislature may fix the number of members of the house of representative at not more than three (3) times as many representatives as there are senators. The senators and representatives shall be chosen by the electors of the respective counties or districts into which the state may, from time to time, be divided by law.

As originally adopted and until November of 1986, Article III, § 4 provided:

> The members of the first legislature shall be apportioned to the several legislative districts of the state in proportion to the number of votes polled at the last general election for delegate to congress, and thereafter to be apportioned as may be provided by law; provided, each county shall be entitled to one representative.

Following the decennial census of 1980, the Legislature began efforts to draw legislative districts that provided equal representation as required by the U.S. Supreme Court decisions, apparently determining that Article III, § 5 had been invalidated. On its third try, the Legislature adopted, and the governor signed, House Bill 830, which was enacted into law as chapter 182 of

10

the 1982 Idaho Session Laws. *Hellar v. Cenarrusa* (*Hellar I*), 104 Idaho 858, 859, 664 P.2d 765, 766 (1983). Section 1 of that act established state policy as, first, "adherence to standards of population deviance as established by federal case law," and, second, "preservation of county boundaries where possible." Section 2 repealed the previous reapportionment plan contained in I.C. § 67-202 and adopted a new reapportionment plan bearing that same code section number.

The 1982 reapportionment plan was challenged in *Hellar I*, for failure to comply with Article III, § 5. The Court recited:

> It is undisputed that thirty-four of the thirty-five legislative districts created by House Bill 830 . . . contain a portion of a divided county. Twenty-two of the thirty-five legislative districts join all or a portion of one county with portions of one or more other counties, in apparent direct violation of the constitutional prohibition against dividing counties to form senatorial or representative districts.

*Id.* at 858, 664 P.2d at 765. The Court noted, "House Bill 830 does appear to meet the equal representation requirement of the United States Constitution." *Id.* at 859, 664 P.2d at 766. However, the Court was not satisfied that a reapportionment plan could not be devised to comply with both the federal and state constitutions and therefore upheld a declaratory order by the district court that "Idaho Const. Art. 3, § 5 is not necessarily invalidated by the equal protection clause of the fourteenth amendment of the United States Constitution," and remanded the case for further evidence. *Id.* at 861, 664 P.2d at 768.

The controversy came back to the Court in *Hellar v. Cenarrusa* (*Hellar II*), 106 Idaho 571, 682 P.2d 524 (1984), wherein the Court declared the legislatively-enacted H.B. 830 to be in contravention of Article III, § 5, because of the numerous county splits. *Id.* at 573-74, 682 P.2d at 526-27. The Court approved a reapportionment plan adopted by the district court, holding that it complied with both federal and state constitutional requirements. *Id.* at 574, 682 P.2d at 527. The district court plan established "thirty-three districts with forty-two senate seats and eighty-four representative seats [with] six multimember districts and seven floterial districts." *Id.*

The Idaho Legislature, apparently disenchanted with floterial districts and seeing the need to eliminate the constitutional prohibition against dividing counties, proposed a constitutional amendment in 1986 to change the reapportionment requirements. HJR No. 4, 1986 Sess. Laws, p. 869. The measure, which was approved by the Idaho electorate in the 1986 general election, amended Article III, §§ 2 and 4 to permit the Legislature to establish between thirty and thirty-five legislative districts. The measure amended Article III, § 5 to prohibit floterial districts and

11

to, in essence, allow counties to be divided but only to the extent that a duly adopted reapportionment statute reasonably determined such division to be necessary in order to comply with the U.S. Constitution.

At the time the amendment to Article III, § 5 was approved by the Idaho electorate at the 1986 general election, legislative reapportionment had historically been accomplished by a duly enacted statute. That is, the Legislature would fashion a reapportionment plan, the entirety of the plan would be incorporated into a bill as a replacement for the then-current version of Idaho Code § 67-202, it would be passed by both houses, approved by the governor and placed into law. The Legislature obviously intended that such procedure for reapportionment would continue into the future because the very next reapportionment statute adopted, after the voters approved the 1986 amendment, was handled in just that fashion. That is, in its 1992 session, the Legislature devised a new reapportionment plan, placed it in a bill as a replacement for the existing version of I.C. § 67-202, approved the same, and obtained the governor's signature. 1992 Idaho Sess. Laws, ch. 13, § 2, p. 32.[5] This clearly indicates that the statute contemplated in Article III, § 5, was a statute containing a reapportionment plan drawn and enacted into law by the Legislature, based on its authority under Article III, §§ 2 and 4. The 1986 constitutional amendment did not foresee that the Idaho electorate would approve an amendment to the Idaho Constitution at the general election in 1994, giving the job of reapportionment to a commission. IDAHO CONST., art. III, § 2(2).

It is obvious that, at the time the 1986 amendment to Article III, § 5 was adopted, the statute which would reasonably determine whether counties must be divided to meet U.S. constitutional standards was the reapportionment statute—the statutory plan adopted by the Legislature. The Legislature used the words "determined by statute," meaning that the statute, itself, would make the determination in any particular reapportionment proceeding. This cannot be construed as a grant or delegation of power to the Legislature to set additional county-splitting requirements. The words "by statute" obviously related to the Legislature's authority under

---

[5] Of considerable interest is the fact that the 1992 version of I.C. § 67-202 divided seventeen counties. Since this seventeen-split reapportionment plan was enacted into law just six years after the passage of the 1986 amendment to Article III, § 5, the Legislature would certainly have been familiar with its requirements and would have fashioned the plan to comply with those requirements. Thus, the Legislature's reapportionment statute reasonably determined that seventeen splits were necessary in order to comply with the United States Constitution.

Article III, §§ 2 and 4 to devise a reapportionment plan and enact it by statute. The provision did not give free rein to the Legislature to make any determination it desired but, rather, required that the determination as to the necessity for dividing counties had to be reasonable—"only to the extent it is reasonably determined" by the Legislature's reapportionment statute—indicating that such determination would be subject to court review. It seems rather apparent that the amendment contemplated the Legislature would have a measure of discretion, both because of the word "determined," indicating a deliberative process,[6] and by virtue of the word "reasonably" indicating an element of discretionary judgment. The language was clearly not intended to be a straitjacket requiring the fewest possible splits but, rather, a provision giving reasonable deference to the Legislature's decision-making efforts.

When the Idaho electorate approved the constitutional amendment to Article III, § 2 in the 1994 general election, removing the reapportionment responsibility from the Legislature and placing that responsibility in the hands of a reapportionment commission, the responsibility for reasonably determining the necessity of dividing counties switched to the Commission. It might have been advisable to specifically state the change of responsibility in Article III, § 5, but that was not necessarily essential. Subsection (1) of the 1994 amendment to Article III, § 2 retained the third sentence originally engrafted into that provision—"The senators and representatives shall be chosen by the electors of the respective counties or districts into which the state may from time to time be divided by law"—but, subsections (2) and (4) gave that responsibility to a commission for reapportionment and, thus, those subsections of Article III, § 2 became the "law" by which the respective counties or districts would be divided. Those new subsections also applied to Article III, § 4, which provided that the Legislature would be apportioned into not less than thirty nor more than thirty-five legislative districts "as may be provided by law." Again, the "law" referred to in Article III, § 4 is the law stated in Article III, §§ 2(2) and (4). And, since Article III, § 2 removed the Legislature from the reapportionment process, with the exception of

---

[6] The word "determine" is defined in Webster's New World Dictionary (Third College Ed., p. 375) as:

> **1** to set limits to; bound; define **2** to settle (a dispute, question, etc.) conclusively; decide **3** to reach a decision about after thought and investigation; decide upon **4** to establish or affect the nature, kind or quality of; fix **5** to find out exactly; calculate precisely; ascertain **6** to give direction to; shape or affect.

The third definition—to reach a decision about after thought and investigation; decide upon—appears to be the most appropriate in the context of Article III, § 5.

limited responsibilities set forth in Article III, § 2(3), the Legislature was no longer authorized to enact the statute whereby the dividing of counties would be reasonably determined pursuant to Article III, § 5 and, thus, although not technically a statute, Article III, §§ 2(2) and (4) became "the law" by which the division of counties would be reasonably determined. That is, by the designation of a different entity for developing a reapportionment plan pursuant to the 1994 amendment to Article III, § 2, the Idaho electorate intended to change the responsibility for making the county-splitting determination, placing it with a six-member commission.

The 1994 amendment was submitted to the electorate with Legislative Council's statement of meaning and purpose, which said in pertinent part, "If the amendment is approved, the state Legislature would no longer have a role in the reapportionment process." The voters in 1994 general election approved the amendment based on that description. After the approval of the amendment, the Legislature's only role in the reapportionment process was to "enact laws providing for the implementation of the provisions of [section 2]," including "additional standards to govern the commission." Art. III, § 2(3). In *Bingham County v. Comm'n for Reapportionment*, 137 Idaho 870, 872, 55 P.3d 863, 865 (2002), we noted "[t]he Idaho legislature enacted statutes providing *guidance* to the Commission in the task of redistricting. Idaho Code §§ 72-1501-1508." (emphasis added).

Having removed the Legislature from the reapportionment process, the 1994 amendment granted the job to a commission on reapportionment. The amended Article III, § 2 places great responsibility upon the Commission. Subsection (1), when read in conjunction with subsections (2) and (4), as well as Article III, § 4, grants the Commission authority and complete discretion to determine whether to establish between thirty and thirty-five legislative districts. Subsection (4) provides authority for the Commission to prepare and file a proposed plan for apportioning upon a two-thirds vote. Subsection (5) states that the Commission's plan shall be in effect for all elections held after it is filed, unless amended by court order.

The role of the Court under Article III, §§ 2 and 5 is to determine: first, whether the Commission's plan complies with one-person, one-vote requirements; second, whether the Commission has reasonably determined that counties must be divided to create legislative districts that comply with the Constitution of the United States; and third, whether and the extent to which the Commission has observed legislative guidance provided in I.C. § 72-1506.

14

In *Bonneville County v. Ysursa*, 142 Idaho 464, 473, 129 P.3d 1213, 1222 (2005), this Court indicated that I.C. § 72-1506 was the statute referenced in Article III, § 5. We wrote:

> [W]e believe I.C. § 72-1506 qualifies as the statute referenced in Idaho Const., art. III, § 5. That statute recognizes the Legislature's authority to authorize the splitting of counties under art. III, § 5 and simultaneously facilitates the people's intent of removing the Legislature from the details of the district-drawing process, as evidenced in art. III, § 2.

It becomes apparent that the conclusion stated in that case is at odds with the analysis set out above. Having been the person who wrote that conclusion, let me issue a *mea culpa* and offer some explanation. Of course, I cannot speak for the other members of the Court who signed onto that opinion, and I do not profess to do so. The issue currently before this Court was not squarely before the Court in *Bonneville County* and the narrow question that was posed there had much to do with how the errant conclusion was reached. Furthermore, it must be admitted that the conclusion was largely the result of a somewhat superficial analysis. The ultimate result in *Bonneville County* was correct, but in my view it was reached by an unsupportable route. The two sentences quoted above are simply not supportable under proper analysis. As set forth above, the statute that would reasonably determine whether counties needed to be split was clearly contemplated to be the legislative reapportionment statute. Furthermore, the Commission draws its authority from Article III, § 2 of the Idaho Constitution, not from any statute.

In *Bonneville County*, the Court was not saying that I.C. § 72-1506(5) amended the language in Article III, § 5 to further limit the circumstances in which counties could be split, nor that a reapportionment plan could not pass muster under Article III, § 5, unless it contained the fewest possible number of county splits. Rather, we were speaking of the mechanism by which the determination of county splits was to be accomplished. We were responding to the following argument made in that case:

> Petitioners contend the people intended [by virtue of the 1986 amendment] to preserve the integrity of county boundaries by requiring a specific statute to ensure division of counties was necessary. They posit that section 72-1506 merely establishes criteria and provides no mechanism for making the requisite determination that a county needs to be divided.

*Id.* Since Article III, § 5 provides that splits may only be accomplished where it is "reasonably determined by statute," it became necessary in that case to identify some statute.

15

The question in *Bonneville County*, then, was whether Article III, § 5 required that in order for county splits made by the Commission to take effect, they had to be approved by a statute enacted by the Legislature. The crux of the Court's decision was that I.C. § 72-1506 provided the mechanism for making the determination as to whether counties needed to be divided and that the Legislature was to be removed from that determination. At no point in the decision did the Court imply that a plan would not be acceptable under Article III, § 5 if it did not accomplish the fewest possible number of county splits, or that the Legislature could establish stricter criteria by statute than the criteria set forth in the Constitution. There is no language in Article III, § 5 authorizing the Legislature to enact more restrictive requirements for dividing counties than set forth in that provision. The provision allowing the Legislature to set out the duties of the reapportionment commission is contained in Article III, § 2(3), which states the "legislature shall enact laws providing for the *implementation* of the provisions of this section . . . and additional standards to govern the commission." (emphasis added). Idaho Code § 72-1506 contains a wish list of what the Legislature would like a reapportionment commission to do in devising a reapportionment plan, but the provisions in that code section cannot be read to amend the specific language of Article III, § 5, which sets the standard for determining whether counties may be divided. What we said is:

> We do not believe the people intended to retain in the Legislature the kind of oversight the petitioners urge.
>
> Instead, we believe I.C. § 72-1506 qualifies as the statute referenced in Idaho Const. art. III, § 5. That statute recognizes the Legislature's authority to authorize the splitting of counties under art. III, § 5 and simultaneously facilitates the people's intent of removing the Legislature from the details of the district-drawing process, as evidenced in art. III, § 2. Petitioners' argument would have us insert into the district-drawing process a step not intended by the people: once the Commission drew a tentative map based on all the data, and decided it needed to split a few counties, it would have to obtain statutory authorization to actually do so. . . . It is therefore clear to us that by amending art. III, § 2, the people intended to remove the Legislature from the details of the process. And it is not as if interpreting § 5 the way we have eliminates any oversight over county-splitting.

142 Idaho at 472, 129 P.3d at 1221. The opinion in *Bonneville County* should have stated that the Commission drew its authority from Article III, § 2, and that the Commission, through its duly adopted plan, is the mechanism intended by the Legislature to make the reasonable determination contemplated in Article III, § 5.

16

Even if I.C. § 72-1506 was the statute referred to in Article III, § 5, the Commission is not required by that statute to devise a plan with the fewest number of county divisions. Idaho Code § 72-1506 lists six mandatory criteria for the Commission to factor into its plan. None of those criteria, however, is specified as being more or less important than any other. Thus, in drawing a plan, the Commission *must*: (1) rely on U.S. Census data; (2) preserve, to the maximum extent possible, "traditional neighborhoods and local communities of interest"; (3) create districts substantially equal in population; (5) avoid, whenever possible, dividing counties; (6) create districts composed of multiple counties from contiguous counties; and (7) refrain from drawing districts to protect political interests. I.C. §§ 72-1506(1)–(3), (5), (6), and (8). If it was the intent of the Legislature to list these requirements in order of priority, it should be observed that subsection (5), calling for avoidance of county splits, is down the list from the requirement to preserve local communities of interest in subsection (2). In addition to the mandatory criteria, the Commission is also admonished to: (1) avoid oddly shaped districts; (2) limit the number of divisions of any county that must be divided; (3) retain voting precincts; and (4) draw multi-county districts in a way that all counties in the district are connected by a major road. I.C. §§ 72-1506(4), (5), (7), and (9).

In *Bonneville County*, we approved the Commission's discretionary call to make a county split, not particularly in accordance with the requirements of subsection (5) of I.C. § 72-1506, but, rather, pursuant to subsection (2). We stated:

> The Commission had a choice to make, and justified its choice by favoring a statutory preference for keeping intact a community of interest. *See* I.C. § 72-1506(2). In this instance, the choice of which county to split in a manner that results in a district not being wholly contained within that particular county is a judgment that must be vested with the Commission.

142 Idaho at 472, 129 P.3d at 1221. The Court deferred to the Commission's determination that the division of Kootenai County into districts was in compliance with Article III, § 5 of the Idaho Constitution but, then, when considering the specifics of one of the splits, applied one of the statutory requirements of I.C. § 72-1506—subsection (2), relating to preservation of local communities of interest—in preference to subsection (5), calling for avoidance, whenever possible, of county splits. We footnoted, "We believe the same discretion and judgment that was vested in the Legislature when it was drawing districts applies to the Commission, unless otherwise limited by statute or the constitution." *Id.* We then stated:

17

> We simply cannot micromanage all the difficult steps the Commission must take in performing the high-wire act that is legislative district drawing. Rather, we must constrain our focus to determining whether the split was done to effectuate an improper purpose or whether it dilutes the right to vote. Neither has been shown. Therefore, our preference for deferring to the Commission compels us to resolve the issue in its favor.

*Id.*

Given the setting in which Idaho voters adopted the current language of Article III, § 5 in 1986, it is clear that the "reasonably determined by statute" language was not an invitation to add additional statutory restrictions upon the constitutional language but, rather, to designate the mechanism by which the reasonable determination would be made. When the Idaho voters subsequently amended the Constitution in 1994 to place the responsibility of reapportionment in the hands of the Commission, the language in Article III, § 5 did not change, and the language "by statute" still referred to the mechanism by which the reasonable determination was to be made.

The mechanism provided in the 1986 amendment to determine whether counties had to be split in order to comply with one-person, one-vote was a legislative reapportionment statute. That meant that the split had to be accomplished with the concurrence of both houses of the Legislature and the approval of the governor. That was obviously a fairly high standard. When the voters decided to remove the Legislature from the reapportionment process in 1994, it was determined that a reapportionment commission would wield that authority under procedural statutes adopted by the Legislature. By virtue of Chapter 15, Title 72, particularly I.C. § 72-1505(5), the Legislature established a two-thirds vote of the Commission as the threshold for approving a plan, also a fairly high standard. In this case, the Commission's decision was unanimous.

The proper way to read Article III, § 5, following the amendment of Article III, § 2 by the Idaho electorate in 1994, is that "a county may be divided in creating districts only to the extent that it is reasonably determined by the constitutional mechanism, i.e. the plan adopted pursuant to Article III, § 2 by the reapportionment commission, that counties must be divided to create senatorial and representative districts which comply with the constitution of the United States." That reading is supported by our holding in *Bonneville County* and dictated by the practicalities of the reapportionment process.

18

The next question is whether Article III, § 5 requires that county splits be considered on an individual basis or whether all splits must be aggregated together to determine whether the total number passes constitutional muster. The language says that "a county" may be split only to the extent it is reasonably determined that "counties" must be divided to comply with the U.S. Constitution. The language calls for a general determination that county splitting must take place in order to devise a plan that will comply with the U.S. Constitution, leaving it to the entity with statutory responsibility for carrying out the redistricting to make the reasonable determination of which splits to make. This makes good sense, given the odd configuration of the state of Idaho and many of its counties, the sparse population of large areas of the state, and the fact that, with 44 counties being shoehorned into 30-35 districts, it would be impossible to accomplish reapportionment without splitting "counties." As we stated in *Bingham County*:

> It is undisputed that the following counties must be split under a new redistricting scheme: Ada, Bannock, Bingham, Bonneville, Canyon, Kootenai, and Twin Falls. Each has too large a population for the ideal district.  It is apparent, also, in a state with 44 counties and 35 legislative districts that joining counties or parts of counties with another is necessary. However, to the extent possible, counties should not be split, or the split should be kept to the minimum possible while meeting equal protection standards.

137 Idaho at 874–75, 55 P.3d at 867–68.[7]

In its findings with regard to Plan L87, the Commission determined that counties must be divided in order to comply with the U.S. Constitution. The Commission wrote:

> Although divided into 44 counties, both the population and land area of the counties are disparate. For example, out of 44 counties, 36 must be combined in some fashion or another to achieve a district with a constitutionally acceptable population. . . . Additionally, based upon the lack of an equal distribution of the population throughout the state, often a simple combination of counties into one district cannot be achieved, which therefore requires a county to be split in order to satisfy the one person-one vote requirement. . . . Each county split actually made in this apportionment has been justified throughout these findings, with the acknowledgement that a change in the determination of which county to split

---

[7] It is important to remember that the Court's analysis in *Bingham* was tailored to facts quite different from those here. In that case, the Commission submitted a plan with a deviation of 11.79%, which was presumptively unconstitutional. 137 Idaho at 872, 55 P.3d at 865. The Commission tried to justify that unconstitutional plan by arguing that it split counties  "to keep together traditional neighborhoods and communities of interest while avoiding oddly shaped districts." *Id.* We said that was "laudable," but could not save the plan from complying with equal protection or the presumption that county divisions must be justified in part by equal protection.  *Id.*

> requires not only a new and competing justification, but also has a ripple effect over all of the other districts as multiple district boundaries will need to be shifted to maintain compliance with one person-one vote.

The Commission then made specific findings supporting each county split, based on the one-person, one-vote requirement.[8] The Commission's findings justifying the splits have not been challenged in any regard in this proceeding.

The redistricting process is a dynamic one that must have a starting point and an ending point, the results of which will be determined to an extent by the progress from one to the other. That is, when the configuration of the first district is determined, that determination will influence the manner in which the next district is determined, and so on. Here, the Commission chose to begin its work at the northern tip of the state. Because of the rather narrow strip it had to work with, a county division became necessary right out of the chute. That division was followed by a multi-district division in Kootenai County, much like that which this Court approved in *Bonneville County*. As each subsequent county division was made, the Commission carefully explained its reasoning. Each county split, when made during the course of its work from the Canadian border south to the Nevada border and then west to the Wyoming border, appears to have been reasonably determined by the Commission and supported by logical findings. That is, when viewed individually, as Article III, § 5 requires, each split makes good sense. Only after fulfilling the requirement of making county splits when it determined them to be reasonably necessary to meet federal constitutional requirements, did the Commission apply the legislative mandates enacted by way of I.C. § 72-1506, pursuant to the authority contained in Article III, § 2(3). Again, it appears the Commission applied the legislative guidelines in a reasonable fashion.

In all, the Commission did a remarkable job. One cannot read through the Commission's findings of fact without concluding that their task was accomplished in a reasonable, conscientious and constitutional manner. Indeed, the Petitioners do not contend that the Commission's work was influenced by improper factors or carried out for nefarious purposes.

---

[8] It should be noted that even the legislative guidance on county divisions in I.C. § 72-1506(5) appears to contemplate consideration of each division on a case-by-case basis. The language in subsection (5) indicates that division of counties shall be avoided "whenever possible." This wording implies that the question of whether it is possible to avoid any particular county division is to be decided on an individual basis as it is encountered during the redistricting process.

They just contend that county splits were made where not absolutely necessary and that the plan produced too many of them.

If the job of this Court is merely to count up the county splits and consider whether some plan could have been devised with fewer of them, regardless of the rationale of those alternate plans, our job is rather simple. If the Commission approves a plan with seven county splits and it appears that one which purportedly could be accomplished with six was presented to the Commission and not adopted, we just declare the seven-split plan unconstitutional and send the matter back. It becomes a race to the bottom. It is likely a mathematical certainty that by running thousands of combinations and permutations through a sophisticated computer there is some plan whereby the ten percent deviation requirement could be fulfilled and the lowest number of county splits could be achieved. This would likely result in the optimum plan—if "optimum" equates to the fewest number of splits. The Commission would be relegated to the job of punching the computer buttons and, while the plans might not make sense on the ground, we would have achieved the "optimum" result of splitting the fewest counties. However, this is not the way that reapportionment has ever been conducted in the State of Idaho, and it is not the result dictated by the Idaho Constitution.

The reason we have a Commission is to bring the human element into the equation—to preserve traditional neighborhoods and local communities of interest, to avoid gerrymandered districts designated to protect particular political parties or incumbents, and the like. We might not always end up with the very least number of county splits possible, but there is nothing in the Constitution that requires that to be done. The only place the word "minimum" comes into play is in I.C. § 72-1506(5), where, after it is determined that a county must be divided, the number of divisions in that county should then "be kept to a minimum." Had the voters, when the amendment was made to Article III, § 5, intended to require a minimization of county splits, they could have employed such language at that time. They did not. Had they intended to give the Legislature the ability to subsequently make such a requirement, they could have included such language in the amendment at that time. They did not. We should not read into the constitutional provision language that is not there.

If this Court imposes a strict requirement that the Commission adopt whatever plan meets the ten percent population deviation and produces the lowest possible number of county splits, the Commission's discretion will be limited to the point that it will have no realistic function.

21

Such a rigid rule would essentially nullify Article III, § 4 of the Constitution, which authorizes apportionment of between thirty and thirty-five districts. Article III, § 2 grants the Commission authority and discretion to make that call. It seems apparent that the fewer districts the Commission decided upon, the more county splits would be necessary. If the Commission must, under all circumstances, arrive at the lowest possible number of county splits, it becomes a virtual impossibility to select any less than the maximum of thirty-five districts, therefore essentially nullifying Article III, § 4, as well as the first sentence of Article III, § 2(1).

A strict requirement to achieve the absolute minimum number of county splits would also effectively nullify the legislative criteria set out in I.C. § 72-1506. The strict rule would effectively strip the Commission of any discretion in devising a reapportionment plan, since, by giving such high priority to elimination of any splitting of counties, other considerations, such as traditional neighborhoods, local communities of interest, would be out of reach.

This Court has always recognized that the body fashioning a reapportionment plan has a substantial amount of discretion. In *Hellar v. Cenarrusa* (*Hellar III*), 106 Idaho 586, 588, 682 P.2d 539, 541 (1984), speaking in the context of one-person, one-vote, we said:

> [T]he apportionment of the legislature is, in the first instance, a matter of legislative discretion and judgment. The courts will not intervene unless a legislatively enacted plan fails to pass constitutional muster.

In this regard, it is worthy of note that the U.S. Supreme Court, likewise, has observed the propriety of according deference to legislative apportioning bodies in the one-person, one-vote context. In *Brown v. Thompson*, 462 U.S. 835, 847-48 (1983), the Court recognized that "substantial deference is to be accorded to the political decisions of the people of a State acting through their elected representatives." As demonstrated above, this Court recognized in *Bonneville County* that the 2002 reapportionment commission had a good deal of discretion and we gave deference to a number of its decisions, observing that "the same discretion and judgment that was vested in the Legislature when it was drawing districts applies to the Commission, unless otherwise limited by statute or the Constitution." 142 Idaho at 472, fn. 8, 129 P.3d at 1221.

The U.S. Supreme Court has allowed population deviations greater than ten percent where proper circumstances exist to justify such greater deviation. *Mahan v. Howell*, 410 U.S. 315, 319 (1973) (upholding a redistricting plan with 16.4% deviation because the plan furthered

22

the state "policy of maintaining the integrity of political subdivisions."). This Court indicated in *Bingham County* that it would probably do likewise. 137 Idaho at 873, 55 P.3d at 866 (implying that a greater than-10% deviation might withstand scrutiny with "sufficient justification," citing to *Mahan*.) However, the Court's opinion here indicates no willingness to allow the Commission to adopt a plan that would make no more than the fewest possible county splits, without even considering its justification for doing so. I find it odd that we would not at least analyze the Commission's determinations, especially when there is no evidence in the record to indicate that it did not act in good faith or reasonably exercise its discretion in doing so.

Rather than merely looking at the face of the reapportionment plan and determining that it has too many county splits, we should perform here the type of analysis that we did in *Bingham County* and *Bonneville County*. That is, we should review and consider the challenged county splits to see if they were made within the Commission's discretion. In *Bingham County*, the Court considered the claims made by the Petitioners, as well as the justifications presented by the reapportionment Commission. 137 Idaho at 872, 55 P.3d at 865. The Court considered whether the plan complied with the one-person, one-vote requirements of the U.S. Constitution, whether specified county splits were adequately supported by the Commission's findings, whether the plan contained oddly shaped districts, whether the Commission properly observed precinct boundary lines, and whether the plan preserved traditional neighborhoods and local communities of interest. *Id.* In *Bonneville County*, the Court performed a similar, but more limited, analysis, focusing on one-person, one-vote, division of certain counties, and splitting of precincts. *See* 142 Idaho at 471, 129 P.3d at 1220.[9]

Here, the Commission carefully crafted its findings of fact, and it seems to me that it is incumbent on the Court to review them to determine whether the Commission carried out its

---

[9] There are two additional items of interest in *Bonneville County*. First, although it does not appear in the reported opinion, the plan at issue in that case, which is contained in the record of this case, contained nine county splits, as calculated pursuant to the criteria utilized in this matter. Also of interest, is that the *Bonneville County* plan contained seventy-eight precinct splits, which the Petitioners claimed to be in violation of I.C. § 72-1506(7). The plan preferred by the Petitioners in that case contained only thirteen precinct splits. The Court noted that the Petitioners had failed to explain how the seventy-eight precinct splits affected their right to vote. 142 Idaho at 474, 129 P.3d at 1223. The Court noted that it appeared the Petitioners' plan was more in keeping with the intent of the statutory provision, and that it would have been helpful for the Commission to better explain why so many splits were needed, but concluded, "In light of the degree of deference we must afford the Commission, and in the absence of evidence that the precinct splits have harmed the right to vote, Petitioners have failed to show the Plan must be rejected." *Id.*

constitutional and statutory responsibilities. When the Commission files a plan that facially comports with equal protection, our review of that plan must be deferential. I would hold Plan L87 constitutional and dismiss the petition.